**Robert L. HENNEN and Patricia Hennen, Plaintiffs,**

**v.**

**The DAYTON POWER & LIGHT COMPANY, Debtor,**

**and**

**George W. Ledford, Intervenor-Trustee.**

**In the Matter of Robert L. HENNEN, Patricia Hennen, Debtors.**

Bankruptcy No. 3–80–02754.
Adv. No. 3–80–0612.

United States Bankruptcy Court, S. D. Ohio, W. D.

Feb. 17, 1982.

David L. Santez, Dayton, Ohio, for defendant.

George W. Ledford, Englewood, Ohio, trustee-intervenor.

Michael L. Lang, Dayton, Ohio, for debtors.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court for disposition of Plaintiffs-Debtors' Complaint requesting, in alternative form, that this Court either,

(1) permanently enjoin the Defendant Dayton Power and Light Company, hereinafter DP&L, from requiring each of the Plaintiffs to deposit $75.00 security for payment of Plaintiffs' current utility service and from discontinuing Plaintiffs' utility service so long as the bills for said service are timely paid, and

(2) in lieu of the requested deposit, order Plaintiffs' Chapter 13 Trustee-Intervenor to provide DP&L with adequate assurance of payment pursuant to 11 U.S.C. § 366(b) and permanently enjoin DP&L from requiring the above-mentioned security deposits so long as bills for Plaintiffs' utility service are timely paid, and

(3) permit Plaintiffs to modify Plaintiffs' plan to allow the Trustee to pay the required deposit from the funds deposited with him over a period to be determined by the Court and, based upon this permission, permanently enjoin DP&L from requiring the above-mentioned security deposits or discontinuing service so long as bills for Plaintiffs utility service are timely paid; or, as an alternative,

(4) permit Plaintiffs to suspend operation of Plaintiffs' plan for one and a half months and send one and one-half monthly payments to DP&L instead of the Trustee, and based upon this permission, permanently enjoin DP&L from requiring the above-mentioned security deposits or discontinuing service so long as bills for Plaintiffs' utility service are timely paid.

The court approved a Joint Pretrial Order submitted by the parties on 17 December 1980. The Court held a continued pretrial conference on 18 March 1981. The matter was tried on 8 July 1981, and the Trustee-Intervenor, on behalf of Plaintiffs, and DP&L each subsequently submitted briefs. The following decision is based upon the Pretrial Order, and pleadings, the evidence adduced at trial, and the briefs of the parties.

### FINDINGS OF FACT

On 8 September 1980, Plaintiffs voluntarily filed a petition for relief under 11 U.S.C. Chapter 13. Plaintiffs listed DP&L in their schedules as a creditor in the amount of $99.91, delinquency for past services rendered. Mr. Hennen testified that DP&L has previously discontinued his utility service when his account was approximately $450.00 delinquent, but that service was resumed by Mr. Hennen's payment of $400.00. The listed amount, however, includes arrearages on the separate accounts with DP&L that each Plaintiff maintained separately for each of Plaintiffs' separate residences. Plaintiffs' Plan was confirmed by this Court on 9 October 1980.

On 8 October 1980, exactly thirty days after Plaintiffs' Petition, DP&L sent each Plaintiff an identical letter, the text of which reads as follows:

The United States District Court has notified us of your bankruptcy filed September 8, 1980.

If you wish to continue using our service at the above address, it will be necessary for you to come into our office at the

Courthouse Plaza and pay a $75 deposit. In lieu of a deposit you may have a qualified property owner sign as a guarantor of your account. You must also sign a new application for service.

PLEASE BRING THIS LETTER WITH YOU WHEN YOU COME INTO OUR OFFICE AT THE COURTHOUSE PLAZA. [Emphasis in text]

Should you fail to meet this requirement by October 15, 1980, your service may be disconnected without further notice....

The letters, quoted above, were sent pursuant to DP&L's routine practice of automatically requiring a $75.00 security deposit or a limited guarantor for continuation of service to residential customers who file for relief in this Court regardless of the customer's past transaction with DP&L. As specified in the letter, upon the filing of a bankruptcy petition, DP&L requires completion of a new application for utility service "for internal accounting reasons." The result of reapplication is to place the burden upon the "applicant" to reestablish credit. O.A.C. § 4901:1–17–03(A). DP&L, however, presumes that an individual who files a bankruptcy petition is a "poor credit risk," regardless of the individual's past payment record, or whether the individual has filed for relief under 11 U.S.C. Chapter 7 or Chapter 13. In other words, a debtor who files in Bankruptcy Court regardless of the circumstances, automatically must either deposit $75.00 as security or obtain a limited guarantor to avoid loss of such necessaries. In the instant case, Plaintiffs have not deposited the requested security because the Court granted a restraining order on 21 October 1980.

The parties' arguments focus on 11 U.S.C. § 366, which provides:

§ 366 UTILITY SERVICE.

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse to discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

Plaintiffs contend that DP&L's letters of 8 October 1980 discriminate against Plaintiffs merely because of the fact of their Petition filing, and are thus violative of 11 U.S.C. § 366(a). Plaintiffs also contend that DP&L's action constitute "an act to obtain possession of property of the estate or of property from the estate," violative of this Court's automatic stay of 11 U.S.C. § 362(a)(3). DP&L contends that the letters of 8 October 1980 merely constitute an exercise of DP&L's rights under 11 U.S.C. § 366(b), and are not discriminatory in that all customers are required by some available means to establish their creditworthiness.

## DECISION AND ORDER

### I

The initial question before the Court is whether DP&L's letters of 8 October 1980 constitute a violation of either 11 U.S.C. §§ 362(a)(3) or 366(a). It is the finding of the Court that DP&L has not violated either provision.

11 U.S.C. § 366(a), by its literal meaning, only prevents utility discrimination against debtors on the basis of a prepetition delinquency. As a general rule, creditors, other than governmental units, (11 U.S.C. § 525), may consider the fact of a bankruptcy filing as a factor in determining whether to extend post-petition credit. Although the unique function of utilities necessitates special rules to protect debtors' access to essential services, it may be argued that nothing in the Bankruptcy Code

itself prevents utilities from the exercise of the creditor prerogative of dissimilar treatment of debtors as a class. Thus, although 11 U.S.C. § 366(a) does not permit utilities to discriminate on the basis of a pre-petition delinquency, utilities may discriminate against any customer, including debtors, on the basis of creditworthiness. 11 U.S.C. § 366(a). In the instant matter, Plaintiffs' protection is not derived from the Bankruptcy Code, but from state law which delineates mandatory guidelines for utility determination of creditworthiness. 11 U.S.C. § 366(a); O.R.C. 4933.17; O.A.C. §§ 4901:1–17–01, *et seq.* In essence, a utility has the discretion to refuse service to any debtor for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of nonpayment for past services. Although 11 U.S.C. § 366(a) is premised upon Congressional concern for debtors' ability to obtain vital utility service, this section neither explicitly nor implicitly grants debtors greater rights than other utility customers, in Ohio codified by statute.

11 U.S.C. § 366(a), however, does not stand alone. Instead paragraph (b) of 11 U.S.C. § 366 adds the federal safeguard, preemptive of state prerogative, that debtors who furnish "adequate protection" shall be entitled to unaltered and continued utility service. 11 U.S.C. § 366(b) also empowers debtors with the right to come before this Court for "reasonable modification" of what otherwise, would be the utilities' *ex parte* determination of adequate assurance.

■ Under Ohio law, a utility may not require a cash deposit if either "the proposed consumer is a freeholder who is financially responsible or is a . . . person who is able to give a reasonably safe guaranty in an amount sufficient to secure the payment of bills for sixty days' supply, (or) . . . the security is not demanded within thirty days of the initiation of service (unless) . . . the account . . . is in arrears." O.R.C. § 4933.-17. Thus, under Ohio law, a utility may not require an additional security deposit from debtors, (11 U.S.C. § 109), who have had

service for longer than thirty days and whose utility account is not "in arrears." The Court notes, by way of dicta, that "reapplication for accounting purposes" does not start the running of a second thirty day period since the thirty day period begins only after the "initiation of service." O.R.C. § 4933.17(B). In the instant case, however, Plaintiffs' account was delinquent at the time of Plaintiffs' Petition. DP&L's request for security, therefore, was permissible despite 11 U.S.C. § 366(a), since the request was specifically authorized by 11 U.S.C. § 366(b) and could have been directed to any DP&L customer.

■ In addition, DP&L's action is not violative of the automatic stay of 11 U.S.C. § 362(a)(3). Although Plaintiffs' Chapter 13 bankruptcy estate includes all their pre- and post-Petition "property," (11 U.S.C. §§ 541 and 1306), 11 U.S.C. § 366(b) grants DP&L the specific right to adequate assurance in the form of a cash deposit before DP&L is required to continue a debtor's service.

II

The question which remains, however, is whether this Court should "reasonably modify" the amount of the requested security deposit. Since the purpose of the deposit is to furnish DP&L with "adequate assurance of payment," the issue, worded differently, is what security is necessary to adequately assure DP&L of payment.

Ohio law impliedly defines adequate assurance in its directive that residential service may not be withheld if an account is not delinquent and if the consumer provides a security deposit of 130% of the "monthly average of the annual consumption by such consumer." O.R.C. § 4933.17(B). The Court notes that, since this formula sets a maximum security deposit for all utility customers, that, as long as payments for current utility usage are not delinquent, DP&L could not require a larger deposit from debtors whose pre-petition delinquency is handled through the Bankruptcy Court without violating 11 U.S.C. § 366(a). In this case, DP&L's request for $75.00 for

each of Plaintiffs' accounts is derivative from this formula and is based upon a calculation of average residential customer usage.

■ This Court's determination of adequate assurance under 11 U.S.C. § 366(b), however, is a federal question, for which relevant state law serves only evidentiary value. Adequate assurance does not require an absolute guarantee of payment, and is largely a factual determination. *In re Cunha*, 1 B.R. 330, 5 B.C.D. 1027 (Bkrtcy. E.D.Va.1979); *In Re Keydata Corporation*, 12 B.R. 156 (Bkrtcy.App.D.Mass.1981). The Court's determination of adequate assurance may also consider the probability of payment through the bankruptcy proceedings. *In Re Keydata, supra; In Re Frye Co.*, 7 B.R. 856, 7 B.C.D. 120 (Bkrtcy.D.Me. 1980).

■ It is the finding of this Court that, on the facts, DP&L's computation for a security deposit in the amount of $150.00, ($75.00 for each of Debtors' separate accounts), is not unreasonable considering the amount of Plaintiffs' usage

### III

The Court notes, however, that Plaintiffs' Chapter 13 Plan was confirmed on 24 October 1980, and that Court records indicate that Plaintiffs have made regular Plan payments since the confirmation.

Since this Court possesses exclusive jurisdiction over Plaintiffs' estate, (28 U.S.C. § 1471(e)), and in light of Plaintiffs' apparent good faith efforts of Plan compliance, it is the finding of this Court that the requested security deposit should be placed with the Trustee to be disbursed to DP&L only in the event of nonpayment for such future services.

Having thus concluded that DP&L was not in violation of the automatic stay and is not illegally discriminating against debtors by demanding adequate assurance of payment, it is necessary to address the situation of court jurisdiction over the estate for the protection of all creditors and the efficient administration of the Chapter 13 proc-

ess. The question is endemic in practically every Chapter 13 individual repayment case being administered by the Chapter 13 Trustee, literally in the thousands. As soon as a debtor diverts payments outside the confirmed Plan, even for a valid purpose, and thereby is unable to make regular payments to the Trustee, ordered by the court, the Trustee incurs an expensive and disrupting administrative burden of reporting a delinquency to the court and, later, of recomputing and rescheduling distributions to the other creditors.

■ For the purpose of avoiding such interference with the Chapter 13 process, and yet to provide adequate assurance of payments to the public utility for future services, a superintendency rule is necessary and here provided as an automatic provision in every Chapter 13 case wherein the debtor is delinquent in payments for pre-petition services. Such an automatic provision will avoid the administrative necessity and burdens to both the public utility and the Chapter 13 Trustee of special interferences in the Chapter 13 cases. We note that 11 U.S.C. § 366(b) contemplates not only a deposit within 20 days, to provide adequate assurance but, also, there may be "other security, for service after such date."

ORDERED, ADJUDGED AND DECREED, that the superintendency rule for administrative purposes and to avoid the disruptions barely outlined above is, as follows:

Every debtor's plan, as duly confirmed by the court, will contemplate a deduction of $75.00 from each debtor's initial payment(s) to the Trustee to be held in reserve as adequate assurance to the public utility of payment for future service after the utility has filed a proof of claim in a case showing a prepetition delinquency. Payment for such future utility services from the deposit shall be considered and treated by the Trustee as a statutory administrative priority ahead of all payments to other non-priority creditors.

Upon consummation of all payments by the Trustee under the Plan as confirmed by the court, the $75.00 deduction(s) with-

held shall be disbursed by the Trustee as excess funds.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that DP&L's right to adequate assurance under 11 U.S.C. § 366(b) is modified by order of this Court directing the Trustee to hold the requested deposit for the period of the Plan, contingent upon Plaintiffs' payment for current DP&L service, and all future demands for cash payments from Debtors is enjoined unless there is a request and notice and hearing conformably to the requirements of 11 U.S.C. § 366(b).