**In the Matter of Delbert D. TABOR, Joann Tabor, Debtors.**

**Delbert D. TABOR, Joann Tabor and George W. Ledford, Chapter 13 Trustee, Plaintiffs,**

**v.**

**GENERAL TELEPHONE COMPANY OF OHIO, Marion, Ohio 43302, Defendant.**

**Bankruptcy No. 3–83–02113.**
**Adv. No. 3–83–0795.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 28, 1985.

Roberta Y. Bavry, Marion, Ohio, for defendant.

George W. Ledford, Englewood, Ohio, Trustee.

Wayne P. Novick, Centerville, Ohio, for debtors.

John E. Breidenbach, Dayton, Ohio, for Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is the Complaint of Debtors, Delbert D. Tabor and JoAnn Tabor, and the Chapter 13 Trustee, George W. Ledford, filed on November 17, 1983, alleging that defendant, General Telephone Company of Ohio [GTE], violated §§ 362 and 366 of the Bankruptcy Code by discontinuing phone service to debtors after adequate assurance had allegedly been made. They further seek damages and attorney fees and costs. After numerous requests for continuances, the Court entered an Order of Dismissal on November 5, 1984, for want of prosecution. Upon motion of the Trustee, the case was reopened on December 20, 1984. The Court tried this matter on January 23, 1985. Briefs were submitted on January 23 and February 4, 1985.

## FACTS

Debtors have received their telephone service from GTE for several years, prior to their filing a voluntary petition for relief under Chapter 13 on September 12, 1983. GTE was listed on their schedules as being owed $776.00. (GTE's proof of claim shows a balance due of $791.10; as filed on October 31, 1983).

Debtors testified that their service had been disconnected on September 20, 1983; while GTE claims that it was disconnected on September 8. They agree that it was restored on October 10, 1983. The Court can only assume that GTE may have ordered the service disconnected at the earlier date, but did not actually disconnect until the later date. However, this disconnect does not represent the alleged violation of the automatic stay.

In a letter dated September 20, 1983, GTE advised debtors that it had been informed of their filing in bankruptcy and requested a deposit of $600.00 payable within 20 days, presumably pursuant to § 366(b). GTE further stated that if the deposit were not made within 20 days, steps to discontinue further telephone service would be taken.

In a letter dated September 27, 1983, the Trustee submitted to GTE his check for $1.00 as adequate assurance of payment for the Debtors future payments. He further wrote that service should be immediately restored and that GTE, if it disputed the adequacy of the assurance of payment, had to request a hearing before this Court. Further, he wrote, "My understanding is that you have requested that the debtors make a deposit of $600.00 before you will restore service. If that is true, that is utterly ridiculous and outrageous."

GTE negotiated the Trustee's check for $1.00 on or about October 3, 1983.

No request was made for a hearing to determine the adequacy of any assurance.

On November 4, 1983, debtor's phone service was again discontinued, resulting in the filing of the instant complaint on November 17. Service remained disconnected for more than a month, until about December 9, 1983.

Debtors testified as to various damages resulting from the lack of phone service during this time, including car costs to reach a pay telephone, lost phone calls from potential employers, and numerous occasions of lost social opportunities for them and their children, e.g. JoAnn was the secretary of her bowling league which almost fell apart when she could not be reached, their daughter was sometimes stranded at school after sport team practice because she could not contact home. Further, they testified that they did not know of the $1.00 offered as adequate assurance, instead relying on their attorney and the Trustee to handle such matters.

For GTE, various employees testified that normal, routine procedure was followed in the Tabor case in computing the deposit, using standards set by the Public Utilities Commission of Ohio [PUCO]. Furthermore, they testified that in computing the Tabor deposit, GTE used as a base the Tabor's bills for the three months prior to their filing which were up to 10 times higher than the average bill incurred by them during the prior year. Further testimony revealed that the $1.00 check was processed to be cashed by a clerk with no authority to agree to a lower deposit, that Ledford's letter to them was "lost", that the $1.00 was not applied on the deposit but rather on the prior bills, and that the only subsequent action taken by GTE after not receiving the full $600.00 requested was to disconnect the Tabors' service, until the instant adversary was filed.

### DECISION

In spite of GTE's assertion in its brief that "the reasonableness of the deposit requested is no longer an issue because the Trustee never paid the $600, ..." the reasonableness of the deposit is at the crux of the controversy herein.

Section 366 of the Bankruptcy Code states:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

This Court has previously interpreted this statute in *Hennen v. Dayton Power & Light Co.*, 8 B.C.D. 1102, B.L.R. (C.C.H.) ¶ 68,631, 17 B.R. 720 (Bankr.S.D.Ohio 1982). All parties herein are aware of this decision: the Trustee intervened in that case and GTE cited and attached a copy of the decision to its posttrial brief.

In *Hennen*, this Court wrote, "This Court's determination of adequate assurance under 11 U.S.C. § 366(b), however, is a federal question, for which relevant state law serves only evidentiary value." Further, the Court wrote:

For the purpose of avoiding such interference with the Chapter 13 process, and yet to provide adequate assurance of payments to the public utility for future services, a superintendency rule is necessary and here provided as an automatic provision in every Chapter 13 case wherein the debtor is delinquent in payments for pre-petition services. Such an automatic provision will avoid the administrative necessity and burdens to both the public utility and the Chapter 13 Trustee of special interferences in the Chapter 13 cases. We note that 11

U.S.C. § 366(b) contemplates not only a deposit within 20 days, to provide adequate assurance but, also, there may be "other security, for service after such date."

ORDERED, ADJUDGED AND DECREED, that the superintendency rule for administrative purposes and to avoid the disruptions barely outlined above is, as follows:

Every debtor's plan, as duly confirmed by the court, will contemplate a deduction of $75.00 from each debtor's initial payment(s) to the Trustee to be held in reserve as adequate assurance to the public utility of payment for future service after the utility has filed a proof of claim in a case showing a prepetition delinquency. Payment for such future utility services from the deposit shall be considered and treated by the Trustee as a statutory administrative priority ahead of all payments to other non-priority creditors. Upon consummation of all payments by the Trustee under the Plan as confirmed by the court, the $75.00 deduction(s) withheld shall be disbursed by the Trustee as excess funds.

This superintendency order specifically finds that $75.00 is adequate assurance for public utilities. GTE requested $600.00; the Trustee offered $1.00. Further, that order specified that the public utility must file a proof of claim before this $75.00 can even be held in reserve. GTE filed its proof of claim on October 31, 1983, more than a month after it contacted the Tabors requesting the $600.00 deposit.[1] As thus outlined, the superintendency order of this Court was ignored by both the Trustee and GTE, rendering both equally at fault.

The Court must now determine the severity of the various violations of the su-

perintendency order before ascertaining appropriate sanctions and/or damages.

██ GTE offered no evidence that the Trustee's actions in offering $1.00 as adequate assurance was anything more than a single instance of an absurd aberration in carrying out his duties as Chapter 13 Trustee for this Court. The Court notes that it is also unaware of any other deviations on the part of the Trustee from its superintendency order. Thus, no sanctions are ordered against the Trustee.

██ GTE itself repeatedly offered evidence showing that it routinely uses its own formula (from PUCO) in determining what it deems to be adequate assurance, thus placing itself above the orders of this Court. Such direct, flagrant and continuous violations of this Court's superintendency order cannot be countenanced: such violations invoke not only contempt of this Court, but the integrity of the judicial process. GTE is ordered to pay $250.00 as sanctions for its contempt of this Court's order. Furthermore, GTE is ordered to pay $250.00 for each and every additional violation of the superintendency order.

██ Furthermore, by applying the $1.00 check to the pre-petition balance owing instead of to the deposit, GTE violated the automatic stay provisions of § 362. GTE, even if by negligence or oversight, obtained a better position vis-à-vis similarly situated creditors of the Tabors. Furthermore, these stay provisions were violated when GTE wrote to the Tabors requesting $600.00, which is $525.00 more than it was entitled to request. Since it was undisputed that the Tabor family suffered some inconvenience in being without phone service for over one month, GTE should pay as damages $526.00, $200.00 should be paid directly to the Debtors and the remainder

---

1. The Court here notes that the $600.00 figure was computed using figures from the Tabors' bills for the three months prior to filing. These figures were extremely inflated (presumably due to the Tabors seeking employment out of the immediate phoning area), as GTE admitted, and as such did not provide a reasonable base to determine "the estimated charge for all service for the ensuing twelve months, plus thirty (30) percent of the monthly estimated charge," as required by the PUCO regulations. Rather it seems that the prior twelve months' bills would have provided a more appropriate base. It seems that GTE manipulated the figures and thus may have violated even the PUCO regulations.

is to be paid to the Chapter 13 Trustee to be used in the Tabor estate.

 Further, the Chapter 13 Trustee is ordered to follow the superintendency order and hold in reserve $75.00 as adequate assurance for GTE service.