In re Dennis Allan CUNHA, Debtor.

**VIRGINIA ELECTRIC AND POWER COMPANY, Plaintiff,**

v.

**Dennis Allan CUNHA, Defendant.**

**Bankruptcy No. 79–01319.**

United States Bankruptcy Court, E. D. Virginia.

Nov. 27, 1979.

James L. Miller, Williams, Worrell, Kelly & Greer, Norfolk, Va., for plaintiff.

Ronald J. Berg, Virginia Beach, Va., for defendant.

## MEMORANDUM ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

This is a case of first impression under the Bankruptcy Code.

It arises pursuant to the provisions of 11 U.S.C. § 366. Utility service.

The Virginia Electric and Power Company [Vepco] filed an application for a cash deposit of "not less than $280.00" as adequate insurance of payment for electric service to be provided the debtor, Dennis Allan Cunha, in the post-bankruptcy period.

The debtor and his wife occupy the apartment at 406 Village Drive, Virginia Beach, Virginia, where they became customers of Vepco on April 2, 1979. The standard deposit for that project was $75.00 but Vepco required none since it was satisfied as to the credit standing of the debtor. Since April the monthly electric bills have ranged from $42.75 to $65.44 but for January and February they had been $167.47 and $110.51, respectively.[1]

At the time of the bankruptcy, November 2nd, $235.00 remained unpaid on the debtor's account.

Vepco argues that it may require a deposit in accordance with the terms and conditions on file with and approved by the State Corporation Commission of the Commonwealth of Virginia, the regulatory agency.

The pertinent part reads:

---

1. The apartment is heated electrically. Prior to April, the landlord paid the utility charge. It was then changed with each tenant paying his own. The debtor's rent in January was $270.00 but was 'reduced' in April to $230.00 monthly.

## IX. DEPOSITS

A. The Company may require the Applicant or Customer to deposit with it initially and from time to time, as a guarantee of payment for electricity used, such amounts of cash as in the Company's judgment will secure it from loss. The maximum amount of any deposit shall not exceed the Customer's estimated liability for two months' usage. Whenever a deposit in excess of forty dollars ($40.00) is required of a residential Customer, said Customer will be permitted to pay it in three consecutive equal monthly installments. The Company shall not be bound to supply electricity until these conditions are fulfilled, and it may discontinue the supply if the appropriate deposit is not paid when required.

Vepco arrives at the $280.00 figure it seeks by using the charges for the two highest months, January and February, $167.47 and $110.51. It should be noted that the terms and conditions cite "two months' usage" and is not qualified by "highest" or "consecutive," although this is what Vepco generally seeks in such circumstances.

The debtor argues that such a deposit, $280.00, is too high and that one of $75.00 is fairer. A high figure, he says, discriminates against him as a debtor under the Bankruptcy Code. There is no indication that he has been extravagant, a ne'er-do-well, or one consuming goods and services and running. On the contrary, he held a good and respectable job which he lost in August due to illness requiring surgery.[2] He says he wishes to obtain a fresh start and remain where he is.

### A New Law

Such an issue as here encountered was previously, under the Act, resolved through case law rather than statute. Too, most of the matters arose in Chapter XI and Chapter XII cases where electric and telephone service were crucial to a debtor's business. A clear split developed among the circuits with decisions ranging from *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056 (5th Cir. 1975), to the right. In their wisdom, the drafters and the Congress saw the need to codify the matter into the Bankruptcy Reform Act of 1978, consequently, section 366.

Decisions of the Second and Ninth Circuits holding the bankruptcy courts had no jurisdiction over utilities' services are now neither *stare decisis* nor a prevailing view; the jurisdiction is now clear.

As is the situation with the Bankruptcy Code throughout, one must be thoroughly acquainted with the legislative history of the Code in its entirety and of a particular section in order to understand—and that is the paramount need, understand—what the Congress sought to effect. That it is difficult to put into the wording of a statute the complete understanding is obvious. Legislative intent is so vastly important. A Court by a surface reading and understanding of so many statutes could easily, too easily, concoct its own shallow interpretation from it.

In the evolution of this particular section there were two separate and rather distinct approaches between the House and the Senate which had to be compromised. We understand section 366 only when we understand (1) the nature of debtors and of creditors, (2) prior case law, (3) the resultant need, and (4) what the Congress wishes (it is the present tense) carried out. H.R. Rep. No. 95th Cong., 1st Sess.; S.Rep. No. 989, 95th Cong., 2d Sess.; and Cong.Rec. H 11093 (September 28, 1979).

Two basic principles must surface in every utility service case. First, a utility may not discriminate against a debtor, or his trustee, simply because at the time of bankruptcy the debtor had not paid for past service. Further, the Bankruptcy Court is granted "reasonable" discretion in deter-

---

2. Query: Would the case of a waster, cheat and/or less substantial debtor provide a different bearing as to what should be done?

mining what constitutes "adequate assurance" of payment for future service.

We dislike criteria, one-two-three, which may tend to impose *rigor mortis* into case law and application.

"It is too simple to say 1–2–3–4, here it is. To do this will forge a rigid formula in case law which succeeding Shepards may too quickly, too easily and too much in rote resort to." *In re Triangle Inn Associates,* 76–954–N (December 29, 1976)

This notwithstanding, a consumer case may be *analyzed* in certain perspectives.

What is the pre-bankruptcy history of the debtor? What is the nature of the debtor, how much is owed and what was the course of dealing on the part of the utility with the debtor? We know the fresh start provided by bankruptcy is for the deadbeat (honest) as well as for the one struck by external adversity, but his past is indicative of what he may do in the future. The utility's past conduct is also of great interest.

How stable are the circumstances of the debtor in the post-bankruptcy period? That he has need for utility service is moot, but the expectation of his future performance may very well touch upon the nature of any assurance.

What is "adequate assurance?"[3] A deposit may not be the best protection. Indeed, such a deposit may be eroded by ever escalating utility costs. A stern policy of prompt payment for service or immediate curtailment may offer greater protection and be fairer, too, to the debtor who obviously is hardpressed to produce a cash deposit so soon after his financial collapse.

Our concern here is with the consumer debtor. There is a kinship to commercial debtors. We have in the past, for instance, required of the latter payment of an adequate, pre-estimated sum, in cash and in advance, at the beginning of each week. Relative to utilities, this is as near to cash on delivery as may be established.

Reduced to its simplest statement in utility cases, we seek to arrive at the nearest thing to cash-on-delivery (C.O.D.). Are not these the terms upon which many creditors put a debtor?

Be advised that each case must and will stand on its own facts.

### The Present Decision

Based upon the facts of this case and upon the intent of Congress to protect the utility but prevent discrimination against the debtor, the Court is of the opinion that the following terms and conditions are equitable:

(1) The required deposit shall be $150.00, to be paid in three equal installments of $50.00 on December 3, 1979, January 2, 1980, and February 1, 1980.[4] $75.00 of the deposit shall be refunded by the Virginia Electric and Power Company, at the specified interest, on December 3, 1980, if the debtor's performance under this order has been complete during the ensuing year. The remaining $75.00 of the deposit shall be refunded as Vepco would refund it to any of its customers in the ordinary course of business.

(2) All payments by the debtor to Vepco shall be in cash.

(3) All payments by the debtor to Vepco shall be timely made in accordance with the 28 to 32 days schedule stated on the statement.

(4) Upon the failure of the debtor to perform any of the terms of this order, Vepco may discontinue its supply to the debtor without further order of the Court.

IT IS SO ORDERED.

---

**3.** Note a prevailing philosophy in the Bankruptcy Code of "adequate protection." Its use here is surely akin to the philosophy of "adequate protection" found elsewhere in the Code.

**4.** The utility's own terms and conditions provide for payment of the deposit in three equal monthly installments where the deposit exceeds $40.00.