**In re GEORGE C. FRYE CO., Debtor in Possession.**

**Bankruptcy No. 280–00465.**

United States Bankruptcy Court,
D. Maine.

Dec. 24, 1980.

Gregory A. Tselikis, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for debtor in possession.

George J. Marcus, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for New England Tel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 752(b)

FREDERICK A. JOHNSON, Bankruptcy Judge.

The Debtor in possession filed its original petition on September 19, 1980 seeking relief under Chapter 11 of the Bankruptcy Code [11 U.S.C. § 1101, et seq.]

On October 3, 1980 New England Telephone, by its Business Manager, posted a letter to the Debtor demanding a security deposit in the amount of $10,000.00 and threatening interruption of service if the deposit was not received by October 23rd.

On October 15, 1980, the Debtor filed an application pursuant to Section 366 of the Code,[1] seeking a determination of reasonable deposit or other security necessary to provide adequate assurance of payment for telephone service during the administration of the Debtor's Chapter 11 case.[2]

After notice to parties in interest a hearing was held on the Debtor's application on October 28, 1980. At the conclusion of that hearing the Court made oral findings of fact and stated its conclusions of law from the bench and ordered counsel to prepare an order for signature.

A proposed order was subsequently presented which was not satisfactory to the Court. The Court prepared its own order dated October 31, 1980 which was entered on November 3rd.

On November 12, 1980 the Telephone Company filed a Motion for Findings of Fact and Conclusions of Law. These findings of fact and conclusions of law are prepared in response to the Telephone Company's motion.

### FINDINGS OF FACT

The Chapter 11 Debtor in this case is engaged in the sale of medical and dental supplies. Its customers are usually hospitals, nursing homes, doctors and dentists.

Its inventory at the time of the Section 366 hearing carried a book value of $1,274,995.00 and its accounts receivable totalled about $900,000.00.

It owns real estate valued at $325,000.00.

The above assets are encumbered to the extent of about $1,400,000.00, leaving assets of approximately $1,000,000 in value unencumbered.

The Debtor has very little cash. Although cash receipts are substantial, the demands upon that cash are equally substantial and removal of $10,000 from present cash flow to meet the Telephone Company's demand for a $10,000 deposit could place the Debtor's attempted reorganization in jeopardy. The Debtor is able, however, to promptly pay current bills when due, including its telephone bill.

Telephone Company's billings are normally handled by computer. Telephone Company's demand for a $10,000 deposit is based upon the customer's average bill for two months. The two month average is used because in the event of nonpayment of a bill handled by computer it would be at least two months in arrears before the business office learned of it. The debtor's average monthly bill is about $5,100.

It is possible for Telephone Company to set up a manual system to monitor the Debtor's bills to ascertain that they are paid within 10 days. This manual system has been used quite successfully in the past in Chapter 11 cases administered by this Court.

### –DISCUSSION–

Section 366 of the Bankruptcy Code [11 U.S.C. § 366] provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after

---

1. Section 366 is made applicable to Chapter 11 cases by Section 103(a) of the Code. 11 U.S.C. § 103(a).

2. The Telephone Company voluntarily agreed not to interrupt Debtor's telephone service pending Court action on the Debtor's application. In cases in which a utility is not so accommodating it may be necessary for a debtor to seek, and in a proper case obtain, an extension of the 20-day provided for in Section 366(b). See Section 105 of the Code and 28 U.S.C. § 1651.

the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

The only issue in this proceeding is the amount of deposit or other security necessary to provide adequate assurance of payment for post-relief telephone service.

Telephone Company argues that only a $10,000 deposit, as demanded by it, will provide such assurance.

The Debtor argues that Telephone Company's demands are unreasonable and to comply with its demand under the present circumstances will jeopardize its attempted reorganization; that it is able to promptly pay its telephone bills when received and that an administrative expense priority constitutes adequate assurance of payment.

■ The Court concludes that upon the facts of this case, an administrative expense priority constitutes adequate assurance of payment if coupled with a procedure for payment of telephone bills within 10 days after receipt.

A fair reading of Section 366(b) makes it obvious that a deposit is not required in every case in order to provide adequate assurance of payment. The subsection speaks of "a deposit or other security." Every Section 366(b) proceeding must be decided upon its unique facts and the ultimate finding by the Court must be that the utility involved has, or has not been provided with adequate assurance of payment. It is the debtor (or the trustee) and not the Court who must satisfy the requirement.

■ Adequate assurance of payment does not mean guaranty of payment; but the Court must find that the utility is not subject to an unreasonable risk of future loss. Collier, 15th Ed. ¶ 366.03.

In the instant proceeding, the Debtor's unencumbered assets are in excess of $1,000,000. Upon confirmation of a plan of reorganization any administrative priority claims must be paid in full, except by agreement.[3] In the event of liquidation it seems highly improbable that claims entitled to Section 507(a)(1) priority[4] would not be paid in full, even though Section 726(b) requires that liquidation administrative expenses be paid ahead of reorganization administrative expenses in the event of a conversion under Section 1112.[5]

In making its determination of what constitutes reasonable assurance of payment it seems reasonable that the Court may draw upon its experience in other cases. Excellent results have been obtained for utilities, general creditors and debtors in previous Chapter XI cases administered in this Court under the old Act, by requiring the debtor to pay utility bills within ten days of their receipt directly to a particular person in the

3. Section 1129 [11 U.S.C. § 1129] provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

4. Section 507 provides:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

5. Section 726 provides:

(b) Payment on claims of a kind specified in paragraph (1), . . . of section 507(a) of this title . . . shall be made pro rata among claims of the kind specified in a particular paragraph, except that in a case that has been converted to this chapter under section 1112 or 1307 of this title, administrative expenses incurred under this chapter after such conversion have priority over administrative expenses incurred under any other chapter of this title or under this chapter before such conversion. . . .

business office of the utility. This procedure permits the utility to carefully monitor the debtor's account and does not place an unreasonable burden on the utility.

In view of the Debtor's ability to pay current bills as they accrue and the value of the Debtor's unencumbered assets, this Court concludes that an administrative expense priority coupled with the procedure outlined above provides Telephone Company with adequate assurance of payment for post-relief telephone service.