## In re UTICA FLOOR MAINTENANCE, INC., Debtor.

82–CV–814.
Bankruptcy No. 82–00049.

United States District Court,
N.D. New York.

Dec. 21, 1982.

Anthony J. Fazio, Syracuse, N.Y., for appellant Niagara Mohawk Power Corp.

Stephen D. Gerling, Utica, N.Y., for appellee Utica Floor Maintenance.

### MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Under the Bankruptcy Code Section 366, 11 U.S.C. § 366, a utility is required to continue providing service to a Title 11 debtor provided the debtor furnishes "adequate assurance of payment" for its post-petition utility bills.[1]  The question presented on this appeal is whether the United States Bankruptcy Court for the Northern District of New York (Marketos, Bkrtcy. J.) erred by permitting the debtor's pre-petition security deposit to serve as "adequate assurance of payment" so long as that debtor remains current in its payments for post-petition electric service.

*Background*

Utica Floor Maintenance, Inc., filed a voluntary petition under Chapter XI on January 11, 1982.  At that time it had on deposit with Niagara Mohawk Power Corporation a security deposit in the amount of either $1,740 or $1,400 and was indebted to the utility in the amount of $1,444.29 for service

---

1.  11 U.S.C. § 366.  Utility Service

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment.  On the request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

at two debtor-owned locations.[2] Utica then obtained an Order to Show Cause from the Bankruptcy Court, restraining Niagara Mohawk from terminating utility services and scheduling a hearing to determine whether further security was required to afford the utility "adequate assurance of payment" under § 366(b).

By Memorandum-Decision and Order of June 17, 1982, the Bankruptcy Court determined that the original security deposit is "(p)roperty of the (debtor's) estate" within the meaning of 11 U.S.C. § 541, and therefore subject to that court's summary jurisdiction.[3] It then ordered that the sum remain on deposit with Niagara Mohawk, to serve as "adequate assurance" of payment for post-petition electric services. This order was made contingent upon the debtor remaining current in its post-petition electric bills; it is subject to modification should the debtor become delinquent in its payments.

Appellant Niagara Mohawk contends that the Bankruptcy Court has committed reversible error in several respects, but the crux of its argument is that the security it was given for post-petition services is "our own money" and does not satisfy Niagara Mohawk's right to "adequate assurance of payment" under § 366(b)[4] Appellant's lament raises questions both of the status of the pre-petition security deposit and the meaning of "adequate assurance"; these questions will be addressed in turn.

**2.** Originally Utica had placed $1,400 as security for services at its Chadwicks store and $340 for its New Hartford, N.Y., store. According to the utility, the $340 was appropriated to liquidate an indebtedness prior to debtor's filing, leaving $1,400 as its total remaining security. However, Judge Marketos declined to rule on the validity of that $340 appropriation, and tentatively considers the full $1,740 to be on deposit.

**3.** 11 U.S.C. § 541. Property of the Estate

(a) the commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . .

*Status of the Pre-petition Security Deposit*

■ The Bankruptcy Court's preliminary determination, that the security deposit originally placed by the debtor with Niagara Mohawk is property of the estate, is correct.[5] "Property" is defined more broadly in the 1978 Bankruptcy Code than under the previous Bankruptcy Act, *compare* 11 U.S.C. § 541 (1978) with 11 U.S.C. § 110(a), (1898), and now embraces "all legal or equitable interests of the debtor". *See, In re Ford*, 3 B.R. 559 (Bkrtcy.Md.1980), *aff'd*, 638 F.2d 14 (4th Cir.1981); *Mattos, Inc. v. Old Colonie Place*, 9 B.R. 89 (Bkrtcy.E.D. Mich.1981).

While the need to refer to state law to determine whether a debtor has a "property interest" is considerably less under § 541 than under the previous Act, *see* 4 *Collier on Bankruptcy*, 15th ed. 541–12 (1982), a reference here would support a finding that the depositor has a property interest which must be respected in bankruptcy. New York Public Service Law § 117 specifically provides that a deposit placed as security with a utility is to be returned to the depositor, with interest, after one year unless that depositor is delinquent or likely to default. Accordingly, once a petition is filed, the security deposit becomes property of the estate, enabling the bankruptcy court to conduct an orderly determination of the respective rights of the parties to that property, with due regard for state law and the depository contract.

**4.** Quote taken from oral argument of Anthony Fazio, Attorney for Niagara Mohawk, on September 28, 1982.

**5.** Neither the parties nor the Court has uncovered any previous decisions as to whether a security deposit is "property of the estate" within the meaning of § 541. It is helpful to note, however, that the Bankruptcy Service Lawyer's Edition considers the issue so obvious that they have included security deposits in their list of § 541 property:

§ 4:5 Particular items included in the estate. . .

II. Tangible Personal Property. . .

B. Deposits. . .

—utilities deposits (gas, electric, oil, phone, etc.)

1 Bkr-L.Ed. § 4:5. (1981).

Niagara Mohawk finds it significant that, under New York CPLR § 5205(g) a security deposit placed with a utility is exempt from "application to the satisfaction of a money judgment" and thereby beyond the reach of the depositor's judgment creditors. It contends that this supports its view that the deposit is not part of the debtor's estate. This argument lacks merit. In determining what is "property of the estate", it is clear that "unlike the requirement of 70a(5) of the Bankruptcy Act, it is not necessary under the Code to further determine whether non-bankruptcy law permits the debtor to transfer the property or permits the debtor's creditors to reach it." 4 *Collier on Bankruptcy, supra,* 541–12. It therefore seems that, while CPLR § 5205(g) would be relevant, even crucial, to a review of a bankruptcy court order placing the security deposit within the grasp of general creditors, it is not relevant to a discussion of whether it should be classified as "property of the estate" within § 366. Judge Marketos implicitly recognized this when he concluded,

> Under state law, therefore, legal and equitable title to the money deposited with Niagara Mohawk by the debtor remains in the debtor, *subject to the contingencies under which it was made.*

*Mem.-Dec. and Order of June 17, 1982* at 6 (emphasis added).

Niagara Mohawk has also urged that the security deposit be deemed a constructive trust for the benefit of the utility, and therefore not property of the estate under § 541. In support, the following passage from the legislative history of the 1978 Code is quoted:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company

had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

H.Rep. No. 95–595, 95th Cong. 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6324 *reprinted in* 11 U.S.C. § 541 at 137.

The hypothetical posed in the House Report is not analogous to the case at hand. In that situation the debtor was, at least conceptually, a mere conduit for a payment by the insurer to the medical creditor. In the instant case the creditor is in possession of funds which, unless the depositor is delinquent, *must* ultimately be refunded with interest. New York Public Service Law § 117. Indeed, if there is a trust here at all, it is more plausible to argue that the utility is trustee of the *res* for the benefit of the customer. *See, e.g., Glass v. Janbach Properties, Inc.,* 73 A.D.2d 106, 425 N.Y.S.2d 343 (1980) (a landlord holding a security deposit is the trustee of that deposit under New York General Obligations Law § 7–103).

However, it seems that the most accurate characterization of the security deposit is that arrived at by Judge Marketos: it is either an escrow deposit or a debt owed by the utility to the depositor. *Mem.-Dec. and Order* at 3–4. This view is supported by the cases Niagara Mohawk relies on in its subsequent argument, that it has a right to "setoff" its debt to Utica against Utica's debt to it, pursuant to 11 U.S.C. § 553.[6] *See, e.g., Halfmoon Fruit and Produce Co. v. Floyd,* 60 F.2d 799 (9th Cir.1932); *In re Mortman,* 36 F.Supp. 897 (EDNY 1941). *See also, In the Matter of Interstate Record Distributors, Inc.,* 307 F.Supp. 1142 (SDNY 1970) (tax refund paid to manufacturer which, by statute and contract, must be credited against debit balance in dealer's

---

**6.** 11 U.S.C. § 553, Setoff

(a) Except as otherwise provided . . . this title (11 U.S.C. §§ 1 et seq.) does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that

arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case . . . . (exceptions to this rule follow)

account, creates a debtor-creditor relationship, not a trust, thereby enabling the manufacturer to setoff its debt to the Chapter XI debtor, against its claims upon the debtor's estate.)

The question of Niagara Mohawk's right to setoff was not squarely before the Bankruptcy Court, and was not finally determined by it. Judge Marketos did note that "any attempt by Niagara Mohawk to appropriate the property either by applying it against the previous bill or by set-off after the date of bankruptcy, would come within the provisions of § 547 of the Code."[7] *Mem.-Dec. and Order* at 6. This did not purport to be a pronouncement of Niagara Mohawk's rights to the deposit, but rather a warning that such rights would be determined by the court, and not unilaterally by the power company. The court then deferred any declaration of the utility's rights to the deposit, "until the case is closed or otherwise determined, at which time it can be decided exactly what the rights of the utility to the deposit might be." *Mem.-Dec. and Order* at 7. Since the Bankruptcy Court has not foreclosed the possibility of setoff, Niagara Mohawk's appellate argument for its right to that creditor remedy strikes us as being premature.

Similarly, the utility's argument that the Bankruptcy Court expanded the debtor's rights to the security deposit beyond its scope at the commencement of the case is premature. *See* H.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977), (Section 541 "is not intended to expand the debtor's rights against others more than they exist at the beginning of the case"). Had the court ordered the deposit returned to the debtor, to be used as the debtor wished, the utility would have good reason to claim that the debtor's rights were being impermissibly expanded. But, for the moment, the deposit remains intact and in place, with its ultimate disposition as yet indeterminate.

Still, the utility's demand for a determination of its rights to the security deposit is timely in another sense: if it is, in fact, entitled to setoff or other exclusive rights to the deposit, this would tend to support its view that the debtor's post-petition bills are being secured by "our own money". Indeed, the very uncertainty created by the Bankruptcy Court's failure to decide Niagara Mohawk's rights to the original deposit calls into question whether that fund can constitute "reasonable assurance" of payment for the debtor's post-petition indebtedness: if the utility has an incipient right to set off which is merely awaiting the imprimatur of the bankruptcy court, it is questionable whether such funds may be appropriated to serve § 366 purposes.

Before that can be answered, it is necessary to examine the meaning of "adequate assurance" under section 366(b).

*Adequate Assurance Under 11 U.S.C. § 366(b).*

■ The legislative history of 11 U.S.C. § 366 indicates that the provision was fashioned to protect the utility while preventing discrimination against the debtor. H.Rep. No. 95–595, 95th Cong., 1st Sess., 350 (1977); *Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (Bkrtcy.App.Pan., D.Mass.1981); *Virginia Electric and Power Co. v. Cunha (In re Cunha)*, 1 B.R. 330, 333 (Bkrtcy.E.D. Va.1979). When this issue arises in the context of a Chapter XI proceeding, the bankruptcy court must also, of course, concern itself with the success of the rehabilitative process.[8] *See, e.g., In the Matter of Robmac, Inc.*, 8 B.R. 1, 4 (Bkrtcy.N.D.Ga. 1979) ("The amount of adequate assurance suggested to be provided under § 366 should not be contradictory to the rehabilitation process"); *In re George C. Frye Co.*, 7 B.R. 856 (Bkrtcy.D.Me.1980). To these ends, bankruptcy courts must be afforded reasonable discretion in determining what constitutes "adequate assurance" of payment for continuing utility services.

---

**7.** 11 U.S.C. § 547 sets forth the rules for the avoidance of transfers of debtor's property which constitute preferences.

**8.** Section 366 is made applicable to Chapter XI cases by Section 103(a) of the Code. 11 U.S.C. § 103(a).

In the four years since the enactment of the new Code, bankruptcy courts have exhibited a marked flexibility and sensitivity in applying § 366 that, in our view, is laudable. For example, in *In re Cunha, supra,* 1 B.R. 330, the court analyzed the as yet unconstrued provision, then ordered a bankrupt debtor to gradually, through installments, build up a security deposit with the power company. Moreover, the amount of the total deposit required by the court was considerably less than the two months billings sought by the utility.

Similarly, in *In the Matter of Robmac, Inc., supra,* 8 B.R. 1, the court felt free to disregard the Georgia Public Service Commission's formula for determining a security deposit amount (which was two month's bills) and, instead, required of the debtor a lesser amount which would "not be contrary to the rehabilitative process". *Id.* at 4. Also, as in *In re Cunha, supra,* the debtor was given three months to establish the required deposit through installments.

More recently, in *In re Keydata Corp., supra,* 12 B.R. 156 a Bankruptcy Appellate Panel affirmed a determination that $25,-000 constituted "adequate assurance of payment" despite a showing by the utility that it could sustain a loss in excess of that amount during the interim between the meter reading and bill payment. The panel noted that " 'adequate assurance' of payment does not require an absolute guarantee of payment. What is required is that the utility be protected from unreasonable risk of nonpayment." *Id.* at 158.

It is also established that a cash deposit is not always necessary to satisfy the "adequate assurance" requirement. The House Judiciary Report on Section 366 is explicit on this point:

> If an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services. It will not be necessary to have a deposit in every case.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin.News 1978, p. 6306. Moreover, the statute itself speaks of "a deposit or other security", 11 U.S.C. § 366(b).

In the Chapter XI proceeding, *In re George C. Frye, supra,* 7 B.R. 856, no deposit was required of the debtor. The court found "adequate assurance" in (1) the existence of a considerable amount of unencumbered assets in the debtor's estate; (2) the telephone company's ability to monitor the debtor's account so as to ascertain any delinquency within a short period; (3) the administrative expense priority that the utility would have in the event of liquidation.

Cash security deposits were also deemed unnecessary in *In re Coury et al.,* 22 B.R. 766 (Bkrtcy.W.D.Pa.1982) and *Demp v. Philadelphia Electric Co. (In re Demp),* 22 B.R. 331 (Bkrtcy.E.D.Pa.1982), although in these cases the debtors had not defaulted prior to filing. Thus "adequate assurance" existed by virtue of the debtors' payment histories.

As one final observation on the propriety of non-monetary assurances, the reasoning of Judge Bonney in *In re Cunha, supra,* 1 B.R. at 333, is quite instructive:

> What is "adequate assurance?" A deposit may not be the best protection. Indeed, such a deposit may be eroded by ever escalating utility costs. A stern policy of prompt payment for service or immediate curtailment may offer greater protection and be fairer, too, to the debtor who obviously is hardpressed to produce a cash deposit so soon after his financial collapse.

Before applying § 366 to the case at hand the Court believes it proper to address the meaning and weight to be accorded two circuit court decisions which arose prior to the enactment of the Bankruptcy Code of 1978.

Niagara Mohawk has placed considerable reliance upon *In the Matter of Securities Investors Properties, Inc.,* 559 F.2d 1321 (5th Cir.1977) in which the Fifth Circuit decided that a bankruptcy court in a Chapter XI proceeding could not summarily require a public utility to provide future serv-

ices to a delinquent customer who would not comply with the utility's demand for a deposit. The appellant quotes the following two passages from that decision:

> For the Bankruptcy court to exercise summary jurisdiction over property, the debtor or his trustee must have actual or constructive possession of the property in question.... (citations omitted)

*Id.* at 1324.

> We recognize that a demand for a deposit securing present utility services may threaten to send a Ch. XI debtor into bankruptcy. However, this possible hindrance to the rehabilitative purposes of Ch. XI cannot bootstrap the bankruptcy court's summary jurisdiction to cover property rights which are not in the actual or constructive possession of the debtor. Here the debtors had no property interest analogous to the telephone numbers in *Fountainbleau [Hotel v. Wankel,* 378 So.2d 351 (Fla.App.1979)], and the utility had not conditioned its duty to serve either upon security deposits for or the payment of prefiling debts. While a public utility has a duty to serve, neither its history of past service not its franchise to serve in the future may fix upon it a duty to provide unsecured future service to a Ch. XI debtor.

*Id.* at 1326.

A close reading of *Securities Investors* reveals that appellant's reliance thereon has been misplaced. The "property" which the Fifth Circuit was referring to was not the security deposit, but the electric service itself. In other words, the court was making the point that a bankruptcy judge had no jurisdiction over electric power, which was not in the actual or constructive possession of the debtor.

If, by citing *Securities Investors,* Niagara Mohawk is arguing that the bankruptcy court here lacked jurisdiction to order elec-

tric service furnished to the debtor, that view is completely discredited by the enactment of § 366, which empowers the court to do just that, subject to the utility's right to "adequate assurance of payment".

If, on the other hand, Niagara Mohawk is citing *Securities Investors* to establish that the bankruptcy court lacked jurisdiction over the pre-existing security deposit, its cite is misplaced, for the case supports no such proposition. Moreover, as discussed earlier in this opinion, it is clear that a security deposit falls within the broad definition of "Property of the Estate" under the new Code, 11 U.S.C. § 541, and is therefore subject to the jurisdiction of the bankruptcy court.

However, if *Securities Investors* is being cited for the limited proposition that utility service cannot be ordered without affording some security to the utility, then this Court has no quarrel with that citation. Indeed, it does seem that in that case electric service was exacted from the power company without regard for its legitimate protection. In fact, the Bankruptcy Service Lawyer's Edition, in its analysis of the case, has suggested that "the same result would apparently be reached under § 366." 1A Bkr-L.Ed. § 6:198 at 310. This, however, by no means establishes that security in the amount and form demanded by the utility was necessary in every case under the prior Bankruptcy Act, or is necessary in every case under the present Code and section 366.[9]

With this reading of *Securities Investors* in mind, any apparent conflict with the Third Circuit decision of *In re Penn Central Transportation Co.,* 467 F.2d 100 (3rd Cir. 1972) dissipates. *Penn Central* involved the reorganization, under Chapter XI, of a railroad that, at the time of its petition, owed $1,200,000 to Con Edison. The utility

---

9. *Securities Investors* is also distinguishable from the instant case in that, as the Third Circuit noted, "the utility had not conditioned its duty to serve either upon security deposits for or the payment of prefiling debts". *Id.* at 1326 (see full citation above). Niagara Mohawk, however, is seeking both repayment of

security for past debts plus additional security for future services. Without yet expressing a view as to their right to both, it is submitted that this places them in a different position from the Georgia Power Company in *Securities Investors,* which had neither.

sought an order requiring the debtor to pay its past due bills and place on deposit some $1,700,000 as security for future services. The district court denied the petition, stating that immediate payment of past debts would jeopardize rehabilitation, and that the security sought was unnecessary so long as the railroad remained current in its post-petition payments. On appeal, one of Con Ed's arguments was that it was entitled, under New York law, to discontinue service unless past due bills were paid.

The Circuit Court recognized that there is "a serious question of fundamental fairness to the supplier... if it is compelled to serve a customer without reasonable assurance of prompt payment." *Id.,* 467 F.2d at 103. However, it observed that payments had been current so far, and that administrative expenses have priority should the railroad become bankrupt. It then concluded:

> Finding the risk of harm to the appellant slight and the likelihood great that the posting of large deposits with all concerned public utilities would jeopardize the continuing operation of the railroad merely to give further security to suppliers who already are reasonably protected, the reorganization court permissibly refused to require the deposit sought by the appellant.

*Id.* at 103–04.

It may safely be said, then, that a security deposit was appropriate in *Securities Investors* because the lower court failed to consider the utility's right to some assurance of payment, but no cash deposit was necessary in *Penn Central,* because there was ample basis, under the circumstances, for finding that the utility was "reasonably assured" by other forms of security.

Accordingly, the lesson from both the pre-Code decisions and from the bankruptcy court cases applying § 366 is that the determination of "adequate assurance" inescapably involves an exercise in judgment; that

"every § 366 proceeding must be decided upon its unique facts and the ultimate finding by the Court must be that the utility involved has or has not been provided with adequate assurance of payment." *In re George C. Frye, supra,* 7 B.R. at 858.

*Conclusions*

■ Turning to the facts of this case, we note that Niagara Mohawk is afforded some assurance of payment for post-petition indebtedness by its right to an administrative expense priority under 11 U.S.C. § 507(a)(1). Again, this has been recognized by an appellate panel as a legitimate factor to consider in a § 366 proceeding, *In re Keydata Corp., supra,* 12 B.R. 156. *See also,* H.Rep. No. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin. News 1978, p. 6306 ("...the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services").

Second, Niagara Mohawk has been assured by the bankruptcy court that, in the event the debtor becomes delinquent in its payments, a petition for modification of the security deposit will be entertained.[10] This is similar in nature to a component of "adequate assurance" employed in *In re Kenyata, supra,* 12 B.R. 156 and in *In re Cunha, supra,* 1 B.R. 330, and brings to mind Judge Bonney's observation in *In re Cunha* that "a stern policy of prompt payment for service or immediate curtailment may offer greater protection" than a cash deposit. *Id.* at 333. Although Judge Marketos did not authorize Niagara Mohawk to terminate service immediately upon the debtor's delinquency, presumably the threat of modification of the favorable security arrangement will have a similar salutary effect upon Utica's payment habits.

The third, and obviously most troubling component of "adequate assurance" given to Niagara Mohawk is the designation of the existing security deposit as security for

---

**10.** At oral argument, there appeared to be some question as to whether the debtor was current in its payments as of that date. The resolution of that question is for the bankruptcy court. Until the debtor is declared delinquent we must consider the correctness of the bankruptcy court's order on the assumption that the debtor is in compliance with that order.

the debtor's post-petition utility bills. As discussed previously, Niagara Mohawk's rights to that original security deposit remain undetermined, while the funds therein are applied to satisfy the utility's rights under § 366. The bankruptcy court is evidently proceeding under the view that so long as it postpones making a definitive pronouncement as to the utility's rights to the original deposit, that sum is available for other applications without prejudicing the utility.

We disagree on this point. By relabeling the original security deposit, the bankruptcy court has rendered a decision, *sub silento,* that for the rehabilitative period, Niagara Mohawk's pre-petition claims are *not* secured by that fund.

One security deposit cannot be made to serve double duty. Seventeen hundred dollars cannot secure the utility with respect to past due bills while it is securing that same creditor for post-petition services. By transforming the original deposit into a component of "adequate assurance" under § 366, the bankruptcy court may well be assuring the utility of payment for such future services, but at the expense of the utility's rights to the original deposit.

Under the scheme imposed by the bankruptcy court, should the debtor slip into bankruptcy, the utility will be covered for up to two months of that debtor's post-petition bills. However, it no longer has a strong assurance that its original claims will be satisfied. The likelihood of payment would depend on whether there are enough unencumbered assets in the estate still available. The bankruptcy court gives no indication of how substantial or how stable that estate appears to be.

Ironically, it may well be that the utility was in a better position without the bankruptcy court's designation of the security deposit as part of the § 366 package. If the utility could setoff its prepetition claims against the security deposit it would then only have to concern itself with post-petition payment, and would be protected in that regard by the administrative expense priority. But as it stands now, the utility is more than adequately protected as to post-petition debts—it has both a $1,700 fund and a superfluous right to an administrative expense priority—while it is underprotected as to prepetition claims.

But the more serious problem, in our view, concerns the use made of a delay in the determination of this creditor's rights. Those rights are not immune from infringement merely because they are, for the moment, undeclared. Unless and until the bankruptcy court can state and substantiate a finding that Niagara Mohawk is not entitled to a setoff, or does not have a secured claim to the original security deposit, those funds are not available to secure any obligations other than the utility's prepetition claims. The purported transformation of a security deposit for prepetition claims into a security deposit for post-petition claims is therefore erroneous.

The above should not, however be taken as a pronouncement that Niagara Mohawk is entitled to the full two month's billings that it is seeking as security under § 366.[11] The fact that New York Public Service Law § 117 prescribes a security deposit in that amount does not foreclose a federal court from independently addressing the federal question: what constitutes "adequate assurance" within the meaning of 11 U.S.C. § 366(b). *Hennen v. Dayton Power & Light Co.,* 17 B.R. 720, 72 (Bkrtcy.S.D.Ohio 1982); *Matter of Robmac, Inc., supra,* 8 B.R. 1; *Matter of Houdashell,* 7 B.R. 901, 903 (Bkrtcy.W.D.Mo.1981). Moreover, that state formula was devised with solvent customers in mind, and without regard to either the public interest in the rehabilitation of Chapter XI debtors or the various other means of securing payment once bankruptcy court jurisdiction has been invoked.

---

11. Nor should it be taken as a pronouncement that Niagara Mohawk is entitled to setoff or a secured claim. As stated previously, these matters were not squarely before the bankruptcy court and must await initial decision by that forum. The above decision merely holds that the original security deposit is not available for use as "adequate assurance" under § 366 during the period in which the utility's rights to such deposit remains indeterminate.

As mentioned above, Niagara Mohawk already has some assurance of payment as a result of its administrative expense priority and the bankruptcy court's assurance that the security terms would be modified in the event of default. If the bankruptcy court is able to determine that this debtor has a sufficiently substantial and liquid estate, then no further security is required to satisfy § 366. H.Rep. No. 95–595, 95th Cong., 1st Sess. 350 (1977); *In Re George C. Frye, supra,* 7 B.R. 856; *c.f. In Re Penn Central Transportation Co., supra,* 467 F.3d 100 (utility is "reasonably assured" of payment for service to Ch. XI railroad without security deposit).

If, however, that determination cannot be made, it appears that some monetary deposit will be necessary to satisfy the "adequate assurance" requirement of § 366. We leave the decision of the precise amount and terms of payment to the discretion of the bankruptcy judge, to be considered upon remand.[12]

Accordingly, it is hereby

ORDERED, that the decision of the Bankruptcy Court is reversed insofar as it requires that an existing security deposit in the possession of Niagara Mohawk Power Corporation serve as "adequate assurance of payment" for the debtor's post-petition debts. The case is remanded for a determination as to whether, in view of the liquidity of the debtor's estate and the other factors discussed above, a monetary security deposit is required to meet the statutory right of the utility to adequate assurances, and if so, the amount and terms thereof.

---

12. The Court is now aware of a new Supreme Court decision, *United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d —— (1982), holding that a provision of the Bankruptcy Reform Act of 1978 which permits a debtor to avoid certain liens, 11 U.S.C. § 522(f)(2), was not intended to be applied retroactively to destroy pre-enactment property rights. Writing for the majority, Justice Rehnquist made the following observation:

> Although the 1978 Act, in general is effective for all cases commenced after its effective date, Congress might have intended that provisions that destroy previously vested property rights apply only to interests that came into effect after the enactment date.

*Id.* at —— U.S. at ——, 103 S.Ct. at 413.
The relevance of this opinion to the case at bar is unclear, first and foremost because the papers on appeal do not reveal the date that the security interest came into effect. If the property interest does predate the 1978 Code, a broad reading of *Security Industrial Bank* might indicate that the parties' respective rights to that fund should be determined by reference to the pre-1978 Code. However, it has already been determined above that the deposit in question is not available for "adequate assurance" purposes, 11 U.S.C. § 366, until the creditor's rights to the deposit are determined one way or another. A re-analysis of the case, under the assumption that the pre-1978 provisions govern, could only further substantiate that conclusion. Since there is a lack of factual basis for making that assumption, and since the assumption would not change the result in any case, the opinion stands as is.