In re UTICA FLOOR MAINTENANCE,
INC., Debtor.

NIAGARA MOHAWK POWER
CORPORATION, Appellant,

v.

UTICA FLOOR MAINTENANCE,
INC., Respondent.

Bankruptcy No. 82–00049.
No. 83–CV–1100.

United States District Court,
N.D. New York.

Aug. 5, 1984.

Anthony J. Fazio, Syracuse, N.Y., for appellant Niagara Mohawk Power Corp.

Stephen J. Gerling, Utica, N.Y., for appellee Utica Floor Maintenance.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This appeal from an Order of the United States Bankruptcy Court, 31 B.R. 509, for the Northern District of New York, Leon J. Marketos, Bkrtcy. J., raises issues concerning the right of a utility company to setoff a Chapter 11 debtor's pre-petition security deposit against that debtor's pre-petition

indebtedness for utility services rendered. For various reasons set forth herein, it appears necessary for the matter to be reconsidered by the Bankruptcy Court, hence the case is remanded.

*Background*

On January 11, 1982, Utica Floor Maintenance, Inc. filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Prior to the filing of its petition, Utica Floor Maintenance, Inc. had given security deposits of $1,400 and $340 to Niagara Mohawk to assure payment of utility bills at its business locations in Chadwicks, New York and New Hartford, New York. At the time it filed its petition, the debtor owed Niagara Mohawk either $1,444.29 or $2,106.00 for pre-petition utility services.[1]

By Order dated June 16, 1982, the Bankruptcy Court directed Niagara Mohawk to retain the total pre-petition security deposit of $1,740.00 as security for the continuation of gas and electric services to the debtor so long as the debtor remained current in the payment for said services and subject to further Order of the Court.

On appeal by Niagara Mohawk, this Court held that the debtor's pre-petition security deposit could not be used as adequate assurance of payment for post-petition services during the period in which the utility's rights to such deposit remained unsettled. The matter was remanded to the Bankruptcy Court for a determination as to whether a monetary security deposit would be required to satisfy the utility's statutory right to adequate assurance of payment for post-petition services. 25 B.R. 1010 (Dec. 21, 1982).

Subsequently, Niagara Mohawk instituted an adversary proceeding to obtain an order (1) that the pre-petition security deposit held by Niagara Mohawk be setoff against the pre-petition debts owed by the debtor to the utility; and (2) that the debtor be required to post adequate assurance in the form of a deposit or other security for post-petition utility services.

On July 15, 1983, the Bankruptcy Court issued its "Memorandum-Decision, Findings of Fact, Conclusions of Law and Order." After reciting the pertinent background, the Court began its discussion of the setoff issue by observing that "the right of setoff is permissive, not mandatory," *Mem.-Dec.* at 4, *quoting 4 Collier on Bankruptcy* ¶ 553.02 at 553–10–11 (15th ed. 1983), and that, in its view, Bankruptcy Courts have discretion "to bar setoff when it tends to frustrate the rehabilitation of the debtor." *Mem.-Dec.* at 4. The Court then considered the statutory criteria for setoff, 11 U.S.C. § 553, and held that the $340.00 security deposit held by Niagara Mohawk in connection with the Debtor's New Hartford location did not qualify for setoff because it was obtained after 90 days before the date of the filing of the petition, while the debtor was insolvent, for the purpose of obtaining a right of setoff against the debtor. *See* 11 U.S.C. § 553(a)(3). With respect to the remaining $1,400.00 on deposit with Niagara Mohawk, the Court found that a setoff "would result in jeopardizing the debtor's prospects for a successful reorganization" and would "be inconsistent with Chapter 11 of the Bankruptcy Code and not in the interest of any of the creditors." *Id.* at 6. It therefore held that Niagara Mohawk was not entitled to setoff the security deposit against the pre-petition debts owed to it.

Turning next to Niagara Mohawk's request for a deposit from the debtor to secure its payment of post-petition utility bills, the Court decided that a deposit of $750.00 would satisfy the utility's statutory right to "adequate assurance." *See* 11 U.S.C. § 366. In its order, the Court directed Niagara Mohawk to "retain $750.00 ... and return to the debtor the remaining

---

1. The Bankruptcy Court found that the debtor owed Niagara Mohawk $1,444.29, *Mem.-Dec.* at 3, a figure also used in this Court's prior decision in the case. 25 B.R. at 1010. However, Niagara Mohawk alleged in its adversary complaint that the debtor owed it $2,106.00, *Complaint* ¶ 6, and the debtor admitted as much in its *Answer* at ¶ 2. The discrepancy is not material to the issues on this appeal.

monies currently held on deposit for its account." *Id.* at 7.

Niagara Mohawk subsequently filed this appeal,[2] maintaining that the Bankruptcy Court erred in declining to permit the set-off. Although it does not challenge that part of the Order that sets an amount of $750.00 as adequate assurance of payment for post-petition utility services, it follows that if the utility is found to be entitled to the setoff it seeks, then the $750.00 must be paid from some source other than the pre-petition security deposit fund.

*Discussion*

"The doctrine of setoff has long occupied a favored position in our history of jurisprudence." *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1164 (2d Cir.1979). Today, the doctrine is embodied in 11 U.S.C. § 553, which is derived from and preserves with some changes the right of setoff of mutual debts in bankruptcy set forth in former § 68 of the superceded Bankruptcy Act. Section 553 provides, in pertinent part:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
> (1) . . .
>
> (2) . . .
>
> (3) the debt owed to the debtor by such creditor was incurred by such creditor—
>
> (A) after 90 days before the date of the filing of the petition;
>
> (B) while the debtor was insolvent; and
>
> (C) for the purpose of obtaining a right of setoff against the debtor.
>
> (b)(1) . . .

It is well understood that a setoff, when allowed, "has the effect of paying one creditor more than another." *Bohack, supra* at 1165. The doctrine thus is in derogation of the policy against affording certain creditors a preference to the detriment of other creditors of the debtor's estate. However, as the Second Circuit has said in connection with former § 68, "[d]espite the preferential advantages bestowed upon certain creditors by virtue of section § 68, setoffs are accepted and approved because they are based upon long-recognized rights of mutual debtors." *Bohack, supra* at 1165.

Section 553 does, however, afford protection against an undue preference by, *inter alia,* prohibiting a setoff as to debts of the creditor to the debtor that were incurred for the purpose of obtaining a right of setoff, within 90 days of the commencement of the case, while the debtor was insolvent. § 553(a)(3). Invoking this section, the Bankruptcy Court disallowed setoff with respect to the $340 security deposit given by the debtor to the creditor in connection with the debtor's New Hartford store, which occurred within 90 days prior to its filing under Chapter 11. The Court's findings in this regard are brief; with respect to the state of mind element in subsection (a)(3)(C), it simply stated that "NIMO collected the deposit for the purpose of obtaining a right of setoff against the debtor." *Mem.-Dec.* at 5.

Although the amount at issue here is relatively small, and although the Bankruptcy Court is terribly overburdened, the requisite finding of a wrongful purpose cannot be sustained on appeal without some explanation for the finding, or at least some evidentiary record, to support that finding. In the absence of any submission to review except the aforementioned statement, it is necessary to remand that portion of the decision for further explanation or proceedings on that point, as necessary.

---

**2.** As a result of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98–353, 98 Stat. 333 (effective as of July 10, 1984) the basis for this Court's appellate jurisdiction is now 28 U.S.C. § 158, and not 28 U.S.C. § 1334 as invoked by the Appellant.

■ With respect to the remaining security deposit of $1,400, which had been placed by the debtor with the utility in connection with its Chadwicks store, there is no question but that the express statutory criteria for setoff are satisfied: there are mutual debts owed by the creditor to the debtor (the security deposit) and by the debtor to the creditor (unpaid bills for prepetition utility services), which arose before the commencement of the case, and none of the statutory exceptions to setoff apply. The issue, however, is whether the bankruptcy judge has the discretion, under these circumstances, to nevertheless deny setoff on the ground that it would "jeopardiz[e] the debtor's prospects for a successful reorganization." *Mem.-Dec.* at 6.

Niagara Mohawk contends, in substance, that once the Court determines that the formal criteria are met, it must permit the setoff, and cannot prevent it on the grounds that it will adversely effect the debtor's rehabilitation. There are, to be sure, a number of decisions that support this mechanistic view of the right of setoff. *E.g., In re R.C.I. Enterprises Incorporated,* 22 B.R. 549, 551 (Bkrtcy.Ct.S.D.Fla. 1982); *In re Princess Baking Corp.,* 5 B.R. 587 (Bkrtcy.Ct.S.D.Cal.1980). *But see In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256 (Bkrtcy.Ct.D.Mass.1982). However, it appears to this Court that there is more room for discretion in the application of § 553 than Niagara Mohawk would acknowledge.

The issue at hand was discussed at some length by the Second Circuit in *Bohack Corp. v. Borden, Inc., supra,* although the governing provision in that case was § 68 of the old Act. That discussion, reproduced in part below, suggests that setoff is favored; and if the substantive criteria for it are met, it should not be prevented, unless it poses a serious and immediate threat to the debtor, in which case it may be deferred to protect The reorganization. Thus, as the Court stated in discussing the doctrine of setoff generally:

> Allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court. This circuit, however, has repeatedly favored the allowance of setoffs. In *In re Applied Logic Corp.,* [576 F.2d 952 (2d Cir.1978) ], a bank was permitted to exercise its right to set off a debt owed it by the bankrupt against deposits and certificates of deposit held by the bank. Judge Friendly commented therein that
>
> > [t]he rule allowing setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be "unjust." It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors ... have long acted in reliance upon it. 576 F.2d at 957–958.
>
> ... The policy of the Bankruptcy Act is to allow setoffs and counterclaims. *Western Land Planning Company v. Midland National Bank,* 434 F.Supp. 616 (E.D.Wis.1977). This court is reluctant to disturb this policy unless compelling circumstances require it. A decision disallowing a setoff must not be made cavalierly. The statutory remedy of set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole.

599 F.2d at 1165. The Court then went on to discuss the availability of setoff in Chapter XI proceedings, and explained that although the right is not "unqualified," it should not be regarded with disfavor, and should be allowed except where it would be inconsistent with the provisions of Chapter XI. *Id.* at 1167. That the Court contemplated interference with the right of setoff only under the most compelling circumstances is clear from its subsequent remarks:

> Where property of the debtor is in the possession of a creditor, the need to protect the debtor from an immediate exercise of a setoff is evident. In *Preferred Surfacing, Inc.,* [*v. Gwinnett Bank & Trust Co.,* 400 F.Supp. 280 (N.D.Ga. 1975) ] for example, the debtor had a general checking account with the re-

spondent bank. Shortly after the debtor filed its Chapter XI petition, the bank by means of setoff applied the sum on deposit against the amount of an outstanding indebtedness allegedly owed by the debtor to the bank. The bankruptcy court fully appreciated the devastating impact such a setoff could have on the arrangement proceeding and properly held the bank in contempt. In an ordinary bankruptcy, a bank may set off a deposit against an unmatured indebtedness even though done after the petition is filed. See generally, 4 Collier on Bankruptcy ¶ 68.02 (14th Ed. 1975). In a Chapter XI proceeding, however, where a business is struggling to resist bankruptcy, resort to such a unilateral, self-help remedy could thwart the arrangement entirely and push the debtor over the brink and into insolvency. Where an immediate setoff would seriously threaten the continued vitality of the debtor, the setoff should be deferred.

This seemingly harsh course of not permitting a creditor to exercise a right that would have been available in ordinary bankruptcy may be justified on the ground that the immediate sacrifice can be compensated, if the proceeding is successful, by appropriate recognition upon confirmation of the plan. *In Re Yale Express Systems, Inc.*, 362 F.2d 111, at 116. In some instances, the setoff may ultimately be denied, but at the outset of the proceeding the deferral of the setoff amounts to little more than a provisional sequestration to give protection for the future. *Lowden v. Northwestern National Bank & Trust Co.*, [298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936)]

*Id.* at 1167.

A recent Third Circuit decision also accords with the view that, under compelling circumstances, an application for setoff may be deferred to protect the debtor's rehabilitation, despite the satisfaction of the formal criteria of § 553. *United States on Behalf of I.R.S. v. Norton*, 717 F.2d 767 (3d Cir.1983). In *Norton*, the IRS asserted a right to retain two Chapter 13 debtors' tax refunds, and to setoff that

amount against the debtors' outstanding tax obligations. The Court noted the tension between the policy favoring setoff and the policy, embodied by Chapter 13, favoring rehabilitation of a beseiged debtor. *Id.* at 773. Then, citing the recent Supreme Court decision *United States v. Whiting Pools, Inc.*, 462 U.S. 198, ——, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983), it observed the "[e]ven creditors whose claims are secured under the Code must submit to the risk inherent in judicial suspension of the rights they normally would have to enforce their claims against property of the debtor." *Id.* The Court then affirmed the Bankruptcy Court's stay of the IRS's right to a setoff, which stay was effective "pending the development of a plan by which the debtors could pay off their creditors completely." *Id.* at 774.

Niagara Mohawk has suggested in its brief that the denial of setoff is particularly inappropriate where the creditor is a public utility, and where the debtor is not engaging in an activity of public importance, such as operating a railroad. The affirmance of a stay of setoff in *Norton, supra,* undermines that argument; the creditor was the United States; the debtors, two private citizens.

■ In sum, then, it appears to this Court that, notwithstanding the presence of the requisite elements of § 553, a Bankruptcy Court has discretion to defer or stay—though ordinarily not bar—the setoff of mutual debts, where there is an immediate and serious threat to the reorganization of the debtor.

■ With respect to the specific order, however, shortcomings in the record and the passage of time make it impossible for this Court to affirm. First, although the Bankruptcy Court stated its conclusion that the requested setoff would jeopardize the debtor's rehabilitation, given the strong policy favoring setoff and the requirement of compelling reasons to defer that right, a more substantial explanation of the factual basis for that conclusion is necessary. *See, e.g., Bohack, supra* at 1167–1169 (express-

ly balancing "equities"). Second, inasmuch as a year has now elapsed since the Bankruptcy Court order issued, it may well be the case that circumstances have changed; if an immediate and serious threat did exist at the time of the order, it may no longer exist at the time this matter is reconsidered upon remand. Third, this Court does not have any record or knowledge of the rehabilitation plan, which would indicate the extent to which the creditor's interest is protected in the absence of a setoff. *See Norton, supra* at 774.

In short, the matter is remanded to the Bankruptcy Court for (1) explanation of the factual basis for the Court's decision with respect to the $350.00 deposit; and (2) reconsideration of the creditor's application in light of possibly changed circumstances; and in the event setoff is stayed, for some further indication of the factual basis for such stay.

IT IS SO ORDERED.