In re Edmund A. COURY and Gloria J. Coury, Debtors.

In re Terry Lee ERRETT and Paula Jean Errett, Debtors.

In re WASHINGTON FENCE CO., INC., t/d/b/a Washington Fence Co., Debtors.

In re Darrell L. KADUNCE, Debtors.

In re George W. HARVEY, Jr. and Nancy L. Harvey, Debtors.

In re John V. STAUS and Betty M. Staus, Debtors.

In re Raymond L. ORAIT and Helen M. Orait, Debtors.

In re Dale Joseph WALKER, Sr. and Delores C. Walker, Debtors.

In re John E. HOWARD and Ivy June Howard, d/b/a John E. Howard Trucking, Debtors.

Bankruptcy Nos. 81–3456, 82–0026, 82–0212, 82–0235, 82–0249, 82–0418, 82–0942, 81–3409 and 81–3405. Adv. Nos. 82–634, 82–633.

United States Bankruptcy Court, W. D. Pennsylvania.

May 20, 1982.

Kenneth Steidl, Pittsburgh, Pa., for debtors Coury and Errett.

H. Terry Grimes, Waynesburg, Pa., trustee—Coury.

Robert H. Slone, Greensburg, Pa., trustee—Errett.

Donald R. Calaiaro, Pittsburgh, Pa., for Washington Fence.

Timothy B. Kiser, Butler, Pa., for Kadunce.

Anthony S. Dedola, Uniontown, Pa., for Harvey.

Michael J. Macko, Connellsville, Pa., trustee—Harvey.

Gino F. Peluso, Pittsburgh, Pa., for Staus and Orait.

Edward S. Stiteler, Thomas Shoemaker, Greensburg, Pa., for West Penn Power.

Bart J. Tyson, Pittsburgh, Pa., for Walker.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

These cases all involve attempts by West Penn Power Company ("the utility") to demand security deposits of the above listed Debtors. These Debtors fall into two categories: those who are not currently delinquent in their payments to the utility, and those who are. In addition, of these nine cases, four are petitions seeking relief under Chapter 7 of the Bankruptcy Code, four are petitions under Chapter 13, and one is a petition under Chapter 11. The first question presented is whether the utility can demand security deposits in cases where there had been no delinquency prior to filing. In the other cases, separate hearings can be requested by either party to determine the appropriateness of the security deposits requested by the utility.

DISCUSSION

The Court is asked to construe Section 366 of the Bankruptcy Code. Section 366 states:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee or the debtor, within 20 days after the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the deposit or other security necessary to provide adequate assurance of payment.

The utility argues that Section 366(b) gives it the right to demand a security deposit of debtors for filing, even though those debtors are not otherwise in default in their payments.

The utility is regulated in Pennsylvania by the Public Utilities Commission ("P.U.C."). The P.U.C. issued a final order on August 13, 1981 in the case of *Cyprian Anyanwu v. Philadelphia Electric Company,* Docket No. Z–15243299, in which it deferred interpretation of Section 366(b) to the Bankruptcy Courts. On page 3 of the Order it states:

> It is noted that under Section 366(b), 11 U.S.C. § 366(b), the Respondent may terminate service if adequate assurance of payment has not been made. While this Commission is without jurisdiction to determine what constitutes "adequate assurance of payment," we will require that the Respondent, in the event it elects to proceed under Section 366(b), adhere to the provisions of Title 52, Pennsylvania Code, Chapter 56, with respect to notice and personal contact prior to termination .... Finally, as this Commission is without jurisdiction to adjudicate the subject matter of Complainant's debt to the Respondent under 11 U.S.C. § 366(b) cannot be stayed by the filing of a dispute.

This Court agrees with the conclusions of the P.U.C. This is a matter exclusively under the jurisdiction of the Bankruptcy Court.

Despite the Order of the P.U.C., the utility argues that pursuant to the authority granted to it by the P.U.C. it can collect security deposits from customers who present a credit risk. The utility relies on Section 56.11 of the Rules and Regulations of the P.U.C. The utility argues that the mere filing of a bankruptcy petition makes the Debtor a credit risk. This Court disagrees with this conclusion. Section 366(b) refers to debtors who have defaulted in their payments prior to filing.

Section 366(b) can only be read in conjunction with Section 366(a). Section 366(a) states that a utility can only discriminate against a debtor who has defaulted prior to filing pursuant to Section 366(b); that is, by demanding security. The utility cannot read Section 366(b) as giving rights to security if there has been no default.

This Court believes that utility security deposits are governed by the specific language of Section 366. Nonetheless, by way of analogy, the language of Section 365(e)(1)(B) in regard to assumption or rejection of executory contracts is helpful. This section specifically makes non-applicable the *ipso facto* language of some contracts as it applies to the bankruptcy filing itself. The section reads:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

>> (b) the commencement of a case under this title.

Similarly we find that a utility cannot insist on the payment of security by one of its customers solely because the customer has filed a bankruptcy petition.

Finally, while this Court is not bound in this area by the regulations of the P.U.C., it may look to those regulations for guidance to determine the reasonable practice in demanding utility deposits. This Court finds that it would be unreasonable for the utility to demand more of a non-defaulting debtor than it would of a new customer. If the utility were to demand more of the debtor, the utility would be attempting to gain an advantage from the fact of a bankruptcy filing. This is contrary to the intent of the bankruptcy laws. Section 56.32 of the Rules and Regulations of the P.U.C. states that no deposit will be required of new customers if the new customer (1) has a satisfactory 24-month payment history, (2) owns real property or has rented the same property for more than a year, or (3) has a satisfactory credit history. The utility cannot require more of a debtor than it would of a new customer pursuant to the regulations of the P.U.C. Therefore, the utility cannot demand security of a non-defaulting debtor.

The utility is Ordered to continue supplying service to those Debtors who have not otherwise defaulted in their payments to the utility prior to filing. The filing of a bankruptcy petition alone is not cause to invoke a deposit if the otherwise applicable P.U.C. rules would not require it.

In those cases where a default has occurred, the utility may request security pursuant to Section 366(b). The reasonableness of that request may be argued in separate hearings before this Court.

An appropriate Order will issue.