In re Gerald Adam SHIREY Sr. and Barbara Jane Shirey a/k/a Barbara Jane Clark a/k/a Barbara Jane Greenling, Debtors.

**Gerald SHIREY and Barbara Shirey, Plaintiff,**

**v.**

**PHILADELPHIA ELECTRIC COMPANY, Defendant.**

**Bankruptcy No. 82–02257G.**
**Adv. No. 82–1667G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 9, 1982.

Joshua Z. Goldblum, Levittown, Pa., for plaintiff/debtors, Gerald Shirey and Barbara Shirey.

T.H. Maher Cornell, Philadelphia, Pa., for defendant, Philadelphia Elec. Co.

Leo F. Doyle, Philadelphia, Pa., trustee.

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Technically, it can be argued that since PECO never sent the final bill to the debtors, that bill never became due within the meaning of 52 Pa.Code § 56.21 which states:

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

■ The issue before us is whether a utility company may request from a debtor adequate assurance of payment in the form of a security deposit for service to be rendered after the filing of a petition in bankruptcy when the debtor has not defaulted on debts owed for services rendered prior to the filing of the petition. We conclude that a utility may request such adequate assurance pursuant to section 366(b) of the Bankruptcy Code ("the Code") only when the debtor has defaulted on a debt owed by the debtor to such utility for service rendered before the order for relief was entered.

The facts of the instant case are as follows:[1] On May 20, 1982, Gerald and Barbara Shirey ("the debtors") filed a petition under chapter 7 of the Code. On June 1, 1982, Philadelphia Electric Company ("PECO") sent the debtors a demand for a security deposit of $140.00 threatening to terminate service if said deposit was not received. The debtors, on July 2, 1982, filed the instant complaint alleging that PECO's demand for a security deposit is not authorized, as PECO contends, by section 366(b) of the Code and that PECO should be enjoined from terminating their electric service for failure to pay the security deposit. At the time the debtors filed their petition, they were current in their payments to PECO for electric service except that a final bill of $46.51 had not been processed and delivered to them. In fact, this final bill was never sent to the debtors but instead was used by PECO to file a proof of claim.[2]

Section 366 of the Code provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or dis-

The due date for the payment of a bill shall be no less than 20 days from the date of transmittal, that is, the date of mailing or physical delivery by the utility to the ratepayer.

criminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b). Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

We agree with the interpretation of section 366 expressed by the court in *In re Coury*, 22 B.R. 766 (Bkrtcy.W.D.Pa.1982):

> Section 366(b) can only be read in conjunction with Section 366(a). Section 366(a) states that a utility can only discriminate against a debtor *who has defaulted prior to filing* pursuant to Section 366(b); that is, by demanding security. *The utility cannot read Section 366(b) as giving rights to security if there has been no default* (emphasis added).

*Id.* at 767.

Consequently, we conclude that section 366(b) of the Code does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered. We disagree with PECO's contention that section 366(a) in no way limits or diminishes the right granted to a utility under section 366(b). On the contrary, we conclude that section 366(b) becomes operative only when a debtor has defaulted on a debt owed for services rendered pre-petition.

PECO contends, however, that the debtors are not current in their payments because when they filed their bankruptcy petition—as is the case whenever a bankruptcy petition is filed—there was a period of time before the filing for which service had been rendered but for which the debtors had not been billed. While this is true, we cannot conclude that this billing delay constitutes a default on a pre-petition debt for services rendered within the meaning of section 366(a). Furthermore, an outstanding debt created by a delay in billing procedures does not represent to us a lack of creditworthiness (which could serve as a basis for a utility's request for adequate assurance of payment for service provided post-petition) as to debts owed for services rendered pre-petition.

In the instant case, since debtors did not default on their electric payments prior to their filing a petition in bankruptcy, PECO cannot request a security deposit for continued service pursuant to section 366(b) of the Code.