**In re PENN JERSEY CORPORATION (Formerly known as Penn Jersey Auto Stores, Inc.), Debtor.**

**Bankruptcy No. 86–05424S.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 6, 1987.

As Amended May 8, 1987.

John F. Murphy, Adelman Lavine Krasny Gold and Levin, Philadelphia, Pa., for debtors.

Walter Greenhalgh, Kleinberg, Moroney, Masterson & Schacter, P.C., Millburn, N.J., for R & S Strauss Associates.

William Fabrizio, Hahn & Hessen, New York City, and Drew Salaman, Salaman & Salaman, Philadelphia, Pa., Co-Counsel for Creditors' Committee.

Bonnie Glantz Fatell, Blank Rome Comisky & McCauley, Philadelphia, Pa., for Mellon Bank.

Todd S. Frankenthal, English, McCaughan & O'Bryan, Fort Lauderdale, Fla., for Visual Graphics.

Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for RS Shopping Center Associates.

Kenneth E. Aaron, Mesirov, Gelman, Jaffee, Cramer & Jamieson, Philadelphia, Pa., for The Fairmore Group.

T.H.M. Cornell, c/o Philadelphia Electric Co., Philadelphia, Pa., for Philadelphia Elec. Co.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

█ Resolution of the Motion presently before us in this Chapter 11 bankruptcy case leads us to consider what constitutes such "adequate assurance of payment" as to oblige a utility to continue service to a debtor subsequent to the bankruptcy filing, per 11 U.S.C. § 366. We hold that § 366 contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances, which will, in certain circumstances, not require a payment or security deposit from the debtor. In this case, because the unrebutted facts of record establish that the Debtor's estate is very likely to have unencumbered assets available to pay administrative claims in full at the effective date of the Plan, we hold that the Debtor's proposal to provide the utility with a super-priority administrative claim in the sum which the utility seeks as a security deposit along with certain other dispensations, since it provides, if anything, more "assurance" than that to which the utility would be minimally required to receive, clearly satisfies the requirement of § 366(b).

The Debtor, which owns and operates approximately twenty retail automotive supply retail stores in the Delaware Valley area and franchises approximately thirty more, filed its bankruptcy Petition on November 24, 1986. The parties' Briefs both inform us that, shortly thereafter, the Debtor and the utility in issue, Philadelphia Electric Company (hereinafter referred to as "PECO"), commenced negotiations relative to terms pursuant to which the Debtor could retain services per § 366(b), the original features of which were the Debtor's promise to make weekly payments. On January 2, 1987, these negotiations broke down, apparently due to practical difficulties which PECO perceived in arranging weekly billing for all of the store locations owned by the Debtor. Since the twenty-day period after the Order for relief during which it was required to supply service without an agreement had by that time expired, PECO demanded that a lump sum payment of $17,050.00 be made by the Debtor within a week upon threat of termination of service. On January 9, 1987, the Debtor paid this sum, but its Counsel sent, with the payment, a letter requesting that the remittance be credited to future billings and not be considered as a deposit and suggesting that the parties endeavor to negotiate a resolution of the matter.

On January 23, 1987, apparently to effect the result of a negotiated resolution of this matter subsequent to January 9, 1987, the Debtor filed what it designated as a Motion to obtain credit from PECO with which would be accorded a "super-priority" status, per 11 U.S.C. §§ 364(c)(1), 503(b), 507(b), in the amount of $45,000.00 as the proposed "adequate assurance of payment" required by 11 U.S.C. § 366(b). Unfortunately, this resolution was frustrated by

the filing, on February 20, 1987, of an Objection thereto by Mellon Bank (hereinafter referred to as "the Bank"), already the holder of a super-priority claim against the Debtor as the result of its agreement to provide credit and allow the Debtor to use its cash collateral in a Court-approved Stipulation of December 3, 1986.

The matter was listed for a hearing on February 25, 1987, and finally continued until March 18, 1987. On the latter date, the Debtor indicated that it and the Bank had agreed to a proposal whereby the Bank would share superpriority status with PECO's claim in the amount of $45,000.00. However, PECO refused to agree to this proposal, contending that it was also entitled to retain the $17,050.00 already paid as a security deposit.

There being no agreement, the Debtor made a record in support of its proposed resolution by calling Robert Frank, its Vice-President, as its sole witness. The other parties present, i.e., PECO and the Bank, called no witnesses. Mr. Frank essentially verified the accuracy of certain portions of the Debtor's schedules, which listed the assets of the Debtor's estate at almost $4,000,000.00 and secured claims against the estate at approximately $1,800,-000.00. At the close of the testimony, the Court accorded the Debtor, PECO, and the Bank, an opportunity to file Briefs in support of their respective positions on or before March 25, 1987, April 1, 1987, and April 8, 1987, respectively, per an Order of March 19, 1987. We did this in order to totally understand the positions of the parties and to render a decision only after reviewing the pertinent law as to what constitutes "adequate assurance" of payment per § 366. This latter issue was of importance to us not only to properly resolve the instant Motion, but also to serve as guidance in future cases, the Court being aware that it has before it a class action challenging PECO's policies in this area as to individual consumer debtors, *In re Green, et al. v. Philadelphia Electric Co., et al.,* Bankr. No. 86–04798S, Adversarial No. 86–1451S.[1]

The Debtor submitted a Brief presenting argument that the $17,050.00 payment should be applied to the Debtor's post-petition account, and covered by a proposed Order which not only provided PECO with a super-priority administrative claim in the amount of $45,000.00, but also provided that, if the Debtor failed to make any post-petition payments, PECO could terminate service upon forty-eight hours notice to the Debtor's Counsel.

PECO subsequently filed its Brief, indicating that it considered the $17,050.00 payment as an "adequate assurance" deposit, and submitting a proposed Order identical to that of the Debtor in almost every respect, the distinction being its insistence that the $17,050.00 be considered "in escrow as further collateral security" for future service, although agreeing to reduce PECO's super-priority claim to the balance of the $45,000.00, i.e., to $27,-950.00, accordingly.

The Bank opted not to file a Brief, but the Debtor utilized the schedule established as a means to fire back a Reply Brief, contending that its payment of January 9, 1987, must be applied to the Debtor's open account under state law.

Despite the Debtor's correct assertion that as payor, it generally had the right to allocate the January 9, 1987, payment as it saw fit, *see In re Pristas,* 742 F.2d 797, 801 (3d Cir.1984) and *Page v. Wilson,* 150 Pa. Super. 427, 433, 28 A.2d 706, 709 (1942), we conclude that the status of the $17,050.00 payment cannot be resolved so easily. PECO demanded $17,050.00 as a security deposit. The Debtor, by its Counsel, remitted the $17,050.00, but in doing so, included a covering letter which attempted to characterize the status of the payment as merely as payment on account pending further negotiations. PECO accepted the payment, without indicating how it intended to apply it, and the subsequent contemplated negotiations ultimately proved unsuccessful, due to the Bank's Objection, on element beyond the control of either of these parties. It is

---

**1.** Per an Order of April 22, 1987, in the *Green* adversarial case, Briefs are to be simultaneously submitted by the Plaintiffs and PECO on the class issue and the merits of this controversy on May 29, 1987, and a hearing will be held thereafter on June 11, 1987, if necessary.

not clear to us that, had the Debtor unequivocally demanded that PECO apply the sums paid to future billings, as opposed to suggesting that negotiations take place which could result in its being considered otherwise, PECO would not have terminated service immediately.

We therefore conclude, as a result that the only fair means for determining whether this payment shall be considered as a deposit, per § 366(b), or merely a payment on future billings, is our deciding whether, under § 366(b), PECO was entitled to the $17,050.00 payment as deposit. If it is so entitled, then the Debtor's standing on its characterization of the payment as a payment on account would not serve to prevent PECO from terminating service unless the Debtor then agreed to allow the payment to be considered as a deposit. If it is not entitled to the $17,050.00 payment as security, then PECO's demand for this sum was wrongful, and we would allow the Debtor to characterize the payment as a payment on account. In other words, the determination of whether PECO is entitled to this sum as a security deposit in order to provide it with adequate assurance under § 366(b), rather than how the Debtor unilaterally sought to apply the payment, is the controlling issue in determining which version of the Order we shall enter.

Our decision is therefore directed by interpretation of 11 U.S.C. § 366, which provides as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee or the debtor, within 20 days after the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the deposit or other security necessary to provide adequate assurance of payment.

Collier indicates that § 366 was promulgated to resolve a split in the Circuits, in cases under the Bankruptcy Act, as to whether the bankruptcy stay prevented a utility from threatening to terminate the service of a debtor in bankruptcy. 2 COLLIER ON BANKRUPTCY, ¶ 366.01, at 366–1 to 366–3 (15th ed. 1986). The leading Third Circuit contribution to this controversy, a statement suggesting that, in that case, the interests of the debtor outweighed those of the utility, was *In re Penn Central Transp. Co.*, 467 F.2d 100 (3d Cir.1972). In that case, the Court of Appeals prevented an electric service termination of a Debtor which had amassed a delinquent bill of $800,000.00 as long as the Debtor's trustees made current payments, despite remanding the matter to the district court only to "consider feasible expedients for shortening the interval between the appellant's supplying of energy and the trustees' payment for it" to less than the normal one-month billing cycle.

The attempt to resolve the split in the circuits set forth in the Code begins with § 366(a), which prohibits the utility from discrimination in providing future service to the debtor due to the existence of a pre-petition debt that might not be paid due to the bankruptcy, comparable to the prohibition of discrimination imposed upon governmental units and private employers in 11 U.S.C. § 525. However, unlike § 525, which requires no performance from the debtor to avoid discrimination, § 366(b) provides a "self-executing," *see* 2 COLLIER, *supra,* ¶ 366.03, at 366–3, provision whereby the Debtor is given twenty (20) days to "furnish ... adequate assurance of payment, in the form of a deposit or other security, for service after that date." Only if the debtor and the utility cannot agree on the form of adequate assurance, or another party in interest objects to the agreement reached, does the matter reach the Court.

This self-executing aspect of the rule is a God-send to bankruptcy courts, and has resulted in a relatively small body of case-

law interpreting § 366, especially considering that almost every debtor, whether an indigent consumer like the Debtor in *In re Allen,* 69 B.R. 867 (Bankr.E.D.Pa.1987), our only previous decision construing § 366, and those in the *Green* class action, or a Chapter 11 debtor, like the Debtor here, with assets of several million dollars, needs utility service from several different sources and hence each debtor may have to negotiate, under § 366, with several utilities simultaneously.

We believe that, in analysis of what "adequate assurance" is required of any particular debtor to retain utility service, it is significant to focus upon the *need* of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.

We do not consider § 366 to place onerous responsibilities upon utilities. The only gratuity which § 366(b) demands from the utility is supplying the Debtor with "unassured" service for the twenty-day period following the entry of the Order for relief. This gratuity would seem to us adequately protected by the utility's right to terminate service upon the failure of the Debtor to act within the twenty-day period. Thus, in *Allen, supra,* 69 B.R. at 874, we noted that "failure to provide the adequate assurance ... within the 20–day period renders a Debtor susceptible to a service termination," to which the Debtor there was subject.

This gratuity is offset by the potentially very advantageous position in which the operation of § 366(b) places the utility. If the Debtor fails to negotiate the terms of adequate assurance within the twenty-day period, the Debtor is virtually at the mercy of the utility. The practical problems facing the debtor in tending to a § 366 problem is borne out by the history of the case, where the Debtor was consumed, within the first two weeks of filing, with litigating the terms of its right to use cash collateral. When its counsel finally turned to the problem of negotiating with PECO, the twenty-day period had elapsed, and PECO was able to demand—and get—a $17,050.00 payment to which its entitlement had not been established. Practically, it often

strains a debtor's counsel to have to negotiate and then schedule a hearing on what assurance should be required within twenty days of the filing if negotiations fall through, which is the only means by which we believe that a Debtor can be protected from subjection to the unilateral sort of demand made by PECO here. Many debtors will obviously simply capitulate to the demands of the utility rather than risk a termination of such a vital service. Furthermore, as this case again illustrates, even where the Debtor and the utility reach an accord, the agreement is subject to modification at the request of any other "party in interest" which deems itself prejudiced by the terms negotiated. Thus, here, Mellon Bank's Objection squelched the agreement between the Debtor and PECO and required another retreat to the drawing board.

While we do not wish to characterize PECO, which generally displays cognizance of its moral responsibility to exercise restraint in withholding such a necessary service as it provides, as opportunistic, we believe that, if we interpreted § 366(b) to require consumers, in all cases, to pay security deposits to retain service, we would provide utilities with an unjustified opportunity to drive hard bargains. This is especially true when we analyze what should be sufficient to adequately "assure" a utility that its interests in obtaining post-petition payment are protected, especially in comparison to the lack of such definitive protection to other post-petition creditors.

We note, in this regard, as we did in *Allen,* 69 B.R. at 876, that the Court of Appeals has stated, in *Begley v. Philadelphia Electric Company,* 760 F.2d 46, 51 (3d Cir.1985), that a utility is well-protected, after establishment of adequate assurance, by its remedy " 'to disconnect service as its remedy for non-payment' without 'recourse to the bankruptcy court,' " even though, as *Begley* specifically holds, the debtor is provided with an additional layer of protection arising from any available state utility commission Regulations limiting a utility's termination rights.

Initially, as Collier observes, we note that "an administrative priority will be available to the utility as a matter of course, ... 2 COLLIER, *supra*, ¶ 366.03, at 366–3 to 366–4. Also, in light of *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986), a utility may also be able to obtain compensation for its services by asserting a claim against a secured creditor, such as a party standing in the shoes of the Bank here, under 11 U.S.C. § 506(c).

Thus, given all of the foregoing protections provided to a utility, it seems to us that relatively little in addition should be required from a debtor to "assure" a utility that a debtor will make payment for future services. We believe that, for two reasons, it is certainly *not* the case, as PECO appears to suggest, that an amount equal to compensate the utility for the sixty-day period that it may take the utility to have the account declared delinquent and service terminated per state utility Regulations can be demanded of every debtor who files bankruptcy and wishes to retain service as a matter of course. First, § 366(b), on its face, states that "other security," in addition to a payment of any amount whatsoever, may suffice as adequate assurance. Secondly, such a demand is analogous to a creditor's demanding compensation for delay in enforcing its rights, a dispensation which we have denied to even partially secured creditors. *See In re Grant Broadcasting of Philadelphia, Inc. (First Opinion)*, 71 B.R. 376, 388–389 (Bankr.E.D.Pa. 1987). *Accord: e.g., In re Timbers of Inwood Forest Associates, Inc.*, 793 F.2d 1380, 1416 (5th Cir.1986), *reinstated*, 808 F.2d 363 (5th Cir.1987) (en banc).

We believe that situations exist where the debtor should not be obliged to do anything—except, of course, to maintain post-petition payments—to continue to have a right to receive post-petition utility service. The situation which quickly comes to mind as an example, since it is raised in the *Green* case, is where the debtor is not and has not been delinquent in payment of utility bills pre-petition. This situation has been before this Court frequently, and the results have uniformly been that no deposit is necessary, as per the following reasoning:

where the debtor has a history of prompt and complete payment, in addition to being completely current in utility payments, a cash deposit would be unnecessary.... the debtor's past history and post-petition remedies available to PECO constitute adequate assurance that the debtor will continue to pay for services as billed. *In re Demp*, 22 B.R. 331, 332 (Bankr.E.D.Pa.1982) (per KING, J.).

*Accord: In re Kelly*, 25 B.R. 249 (Bankr.E. D.Pa.1982) (per GOLDHABER, CH. J.); *In re Shirey*, 25 B.R. 247 (Bankr.E.D.Pa.1982) (per GOLDHABER, CH. J.); and *In re Coury*, 22 B.R. 766 (Bankr.W.D.Pa.1982) (per COSETTI, CH. J.). *Contra: In re Smith, Richardson, & Conroy, Inc.*, 50 B.R. 5 (Bankr.S.D.Fla.1985).

The presence of the *Penn Central* decision in this Circuit, although a decision under the Act rather than the Code, is a further indicia of the principle established in our local courts that a payment of a security deposit is not required as a condition for retention of post-petition utility service. The Court there expressly holds that, simply because unpaid post-petition bills would constitute expenses of administration, the debtor there was not required to make payments on account of prior delinquencies to retain service. 467 F.2d at 103.

Following these local decisions, the Debtor's case here was based primarily upon a number of additional decisions which hold that, when the debtor has substantial unencumbered assets, such that payment of all administrative claims is virtually assured, granting the utility an administrative claim and little or nothing more may constitute adequate protection. *See In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1018 (N.D.N.Y.1982) (Court states that if debtor "has a sufficiently substantial and liquid estate, no further security is required"); *In re Woodland Corp.*, 48 B.R. 623, 625 (Bankr.D.N.M.1985)) (administrative claim may be given in place of cash deposit); and *In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr.D.Me.1980) (administrative priority plus procedure for payment of bills within ten days of receipt deemed adequate assurance). Of course, giving

the utility an administrative priority will not suffice in every case. *See In re Stagecoach Enterprises, Inc.,* 1 B.R. 732, 735–36 (Bankr.M.D.Fla.1979) (administrative claim insufficient where debtor paid post-petition bill with a bad check).

Even where the debtor's situation is not as financially secure as those of the debtors in the foregoing cases, the courts have considered the rehabilitative needs of debtors and have required debtors who were somewhat less than financially stable to provide a security deposit of considerably less than double the debtor's monthly bill, which PECO implies is the norm, as sufficiently adequate assurance of future payment. *See In re Monroe Well Service, Inc.,* 69 B.R. 58 (E.D.Pa.1986) (deposit for one week's service cost plus preventing debtor from increased service use held sufficient assurance); *In re Keydata Corp.,* 12 B.R. 156 (Bankr.App.D.Mass.1981) (approximately one week's bill deposit held sufficient); *In re Marion Steel Co.,* 35 B.R. 188, 195–200 (Bankr.N.D.Ohio 1983) (utility denied super-priority status and immediate right of termination upon any subsequent delinquency and required to accept as assurance about one week's deposit, even though the debtor's monthly bill was about $650,000.00); and *In re Cunha,* 1 B.R. 330, 332–33 (Bankr.E.D.Va.1979) (consumer debtor permitted to deposit about one month's average usage as security.).

In the instant case, we are presented with a Debtor who owes little, if any, prepetition debt to the utility. Had the Debtor been conclusively able to establish that it had no pre-petition debt, that factor alone would have sufficed, in the absence of any extraordinary circumstances suggesting otherwise, to cause us to require no further performance from the Debtor to provide adequate protection, on the basis of the string of decisions in *Demp, Kelly, Shirey,* and *Coury, supra.*[2] However, the Debtor has, to our satisfaction, proven, without rebuttal, that it has sufficient unencumbered assets to make good on its promise

that PECO will be assured of payment for post-petition service by its being granted an administrative claim, let alone its being granted a superpriority claim.

There is no question in our mind that the Debtor's offer of assurance of payment to PECO here is adequate. We therefore see no basis to add to this offer a right to PECO to retain the $17,050.00 payment, which it used its leverage to induce the Debtor to relinquish as an additional assurance on January 9, 1987. Without deciding whether any lesser offer may have constituted sufficiently adequate assurance, per § 366(b), we are therefore granting the Debtor's Motion, and entering our Order almost verbatim in the form of the proposed Order attached by the Debtor to its Brief.

---

**2.** In its Brief, the Debtor contends that it had no pre-petition indebtedness to PECO. None is set forth in the Debtor's schedules. However, PECO, in its Brief, avers that the Debtor owed it $30,000.00 at the time of filing. Mr. Frank provided no testimony on this issue, and thus, as PECO accurately points out, we are compelled to conclude that the record is silent on this point.