**In re Robert E. STEINEBACH, Jr. and Carmen R. Beauchamp–Steinebach, Debtors.**

**Robert E. Steinebach, Jr. and Carmen R. Beauchamp–Steinebach, Plaintiffs,**

**v.**

**Tucson·Electric Power Company, Defendant.**

**Robert E. Steinebach, Jr. and Carmen R. Beauchamp–Steinebach, Plaintiffs,**

**v.**

**Qwest Communications Corp., Defendant.**

**Robert E. Steinebach, Jr. and Carmen R. Beauchamp–Steinebach, Plaintiffs,**

**v.**

**Southwest Gas Corporation, Defendant.**

Bankruptcy No. 4–02–04876–EWH.

Adversary Nos. 4–02–00138–TUC, 4–02–00158–TUC, 4–02–00161–TUC.

United States Bankruptcy Court, D. Arizona.

Jan. 2, 2004.

Eric Slocum Sparks, Tucson, AZ, for Debtors/Plaintiffs.

Bryan Albue, Fennemore Craig, P.C., Phoenix, AZ, for Qwest.

Michael Green, Munger Chadwick, PLC, Tucson, AZ, for Southwest Gas.

Mark Rubin, Tucson, AZ, for TEP.

Cheryl K. Copperstone, Tucson, AZ, for Chapter 13 Trustee.

### *AMENDED* MEMORANDUM DECISION

EILEEN W. HOLLOWELL, Bankruptcy Judge.

In this case, I have been asked to decide if consumer debtors must pay a utility deposit in order to satisfy 11 U.S.C. § 366(b) which requires that utilities receive adequate assurance of payment postpetition. If consumer debtors have timely been paying their utility bills, utilities are not entitled to a deposit as adequate assurance because they are not confronted with an unreasonable risk of not being paid simply because a customer files a bankruptcy case. When a consumer debtor is more than 30 days past due on utility bills or has been delinquent more than twice in the preceding 12–month period, utilities

may be entitled to adequate assurance. Adequate assurance may be provided in a number of different ways, including proposing a Chapter 13 plan which provides for the payment of an adequate assurance deposit. The reasons for these conclusions are explained in the balance of this decision.

## FACTUAL AND PROCEDURAL HISTORY

On September 30, 2002, the Debtors filed their Chapter 13 Petition. They listed debts to Tucson Electric Power ("TEP") in the amount of $477.23 and to Southwest Gas ("Southwest") in the amount of $200.00. On October 17, 2002, they filed a Chapter 13 Plan which provides for monthly payments of $775.00 over 40 months for a total of $31,000.00.

After the case was filed, TEP, following its policies dealing with customers who file for bankruptcy, demanded a deposit of $280.00. On October 24, 2002, the Debtors responded to the request by filing a Complaint for Temporary Restraining Order and Injunctive Relief (Adversary No. 02–00138) ("TEP Adversary") seeking to bar TEP from disconnecting the Debtors' electric service and from demanding a deposit.

On October 8, 2002, Southwest, following its policies dealing with customers who file for bankruptcy, sent a letter to the Debtors demanding a deposit of $310.00. On December 17, 2002, the Debtors responded by filing a Complaint for Temporary Restraining Order and Injunctive Relief (Adversary No. 02–00161) ("Southwest Adversary") seeking to bar Southwest from disconnecting the Debtors' gas service and from demanding a deposit.

On November 19, 2002, Qwest Communications Corp. ("Qwest"), which was not listed as a creditor by the Debtors, but had learned of their bankruptcy filing, following its policies dealing with customers who file for bankruptcy sent the Debtors a demand for a deposit of $260.00. On December 11, 2002, the Debtors responded by filing a Complaint for Temporary Restraining Order and Injunctive Relief (Adversary No. 02–00158) ("Qwest Adversary") seeking to bar Qwest from disconnecting the Debtors' land line and cell phone services and from demanding a deposit.

The total amount of deposits demanded by the TEP, Southwest and Qwest (collectively the "Utilities") was $850.00 or slightly more than one monthly Chapter 13 payment under the Debtors' Plan. In addition to sending demands for a postpetition deposit, the Utilities followed internal procedures which closed out the Debtors' prepetition accounts and opened up new postpetition bankruptcy accounts effectively making the Debtors "new" customers.

In all three adversary proceedings, the Debtors allege that it is improper for utilities in a Chapter 13 case to require the posting of a deposit, or other form of security, as adequate assurance for the delivery of postpetition utility services. The Debtors argue that utilities are provided with adequate assurance of repayment in Chapter 13 cases by the filing of the bankruptcy schedules, budget and a Chapter 13 plan. In all three adversaries, the Chapter 13 Trustee appeared at the hearings on the Application for Temporary Restraining Order and/or filed pleadings asserting that requiring Chapter 13 debtors in to file deposits with utilities is inconsistent with 11 U.S.C. § 1325(b)(1)(B), which requires debtors to pay all of their disposable income to the Chapter 13 Trustee.

In all three adversaries, after hearings were set on the Applications for Temporary Restraining Orders, the defendants

stipulated not to cut off utility services pending settlement discussions. On November 22, 2002, an evidentiary hearing was conducted in the TEP Adversary. At the conclusion of that hearing, the court orally ordered the Debtors to stay current on postpetition bills due to TEP and enjoined TEP from cutting off services without first seeking court relief. In February 2003, the Debtors and the Defendants in all three adversaries agreed to the entry of an Order ("Agreed Order"), which provided for a briefing schedule on the following issues:

1. The applicability of 11 U.S.C. § 366 in Chapter 13 cases;

2. What constitutes adequate assurance of payment under 11 U.S.C. § 366(b) in Chapter 13 cases; and

3. Any other issue "germane" to the issues raised in the adversary proceedings.

The Agreed Order also required the Debtors to make timely payments to the Chapter 13 Trustee and gave the Utilities the right to seek an expedited court hearing, seeking to terminate service if postpetition payments were made more than five calendar days late or if the Chapter 13 Plan payments were not being timely made.

In April 2003 and August 2003, TEP petitioned the court to terminate Debtors' service due to their failure either to make a regular payment or to timely make a Chapter 13 plan payment. In both instances, the Debtors cured the default prior to the times set for TEP's expedited hearings. The Debtors also failed to timely pay Qwest in December of 2002 and February of 2003. Both payments were brought current before Qwest sought the court's intervention.

In mid-September 2003, the Debtors filed a Motion for a four-month Moratorium of Plan Payments due to Mr. Steinebach's temporary back injury. The Utilities have not objected to the Motion for Moratorium.

After the entry of the Agreed Order, the parties stipulated to various continuances in the briefing schedule. Final briefs were filed in mid-August 2003. The matter is now ready for decision.

## ISSUES

1. Must all consumer debtors, regardless of their prior history of payment, make a cash deposit or post some other type of security to satisfy the adequate assurance requirements of § 366(b)?

2. Can Chapter 13 debtors treat utility creditors in a Chapter 13 Plan in a way which satisfies the requirements of § 366(b)?

3. What must the Debtors in this case do to provide the Utilities with adequate assurance under § 366(b)?

## STATEMENT OF JURISDICTION

Jurisdiction *is proper* in this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b).

## DISCUSSION

### A. What the Parties Want:

By the time that their final briefs were filed, the Chapter 13 Trustee and the Debtors had abandoned any claim that § 366 does not apply in Chapter 13 cases.[1]

---

1. Section 366 provides:
 (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered

In their brief, the Debtors advanced the argument that Qwest, is not a utility within the meaning of § 366. That determination is best left to another day. This decision is intended to address what utilities are entitled to as adequate assurance of postpetition payment in consumer cases and because this case involves two other utilities, deciding whether Qwest is a utility is not necessary to the decision.

The real dispute in this case is about what constitutes "adequate assurance" in the context of consumer cases, particularly Chapter 13 cases. The Utilities argue that in every case, regardless of the state of a debtor's delinquency, some sort of adequate assurance in the form of deposit or other special arrangements should be provided either by direct payment to the utility combined with stay relief (Qwest's argument) or by a deposit being made with the Chapter 13 Trustee, which will be paid to the Utilities in the event of a postpetition default, or if there is no postpetition default, will be distributed to the other creditors at the end of the Chapter 13 Plan term (TEP/Southwest argument).

The Utilities, relying on Arizona state law utility regulations, assert that any deposit should be equal to two times a debtor's average monthly bill for the previous twelve-month period. *See* Arizona Corporation Commission Rule 14–2–303(B)(6)(b). As an alternative to payments of a deposit, TEP and Southwest suggest that a Chapter 13 debtor be allowed to "opt out" by entering into a stipulation to lift the stay which will require the debtor to pay both pre- and postpetition amounts due in the "ordinary course of business". Under this "opt out" option, termination of utility services would presumably be governed by applicable Arizona law including regulations which define how and when service may be terminated.[2]

The Chapter 13 Trustee and the Debtors argue that adequate assurance is provided in a Chapter 13 case by a debtor's commitment of all disposable income to plan payments and by the Trustee's supervisory role in a Chapter 13 case. The Debtors further argue that in those cases where a debtor is delinquent prepetition on utility bills, utilities can protect themselves by filing a proof of claim for a deposit, which, if the claim is allowed, will be set aside by the Chapter 13 Trustee to be paid in the event of a postpetition default. If a debtor fails to make a postpetition payment, such earmarked deposits would be paid to the utility prior to unsecured claims. In the event of a dismissal of the case, the deposit would be paid to the utility claimant along with other allowed administrative claims before any money is returned to the debtor.

■ The Utilities oppose any requirement that would force them to file a proof of claim, arguing that the language of § 366(b) is self-executing and that the burden is on the debtor to provide adequate assurance, not on utilities to file proofs of claim. All parties other than Qwest urge the court to establish guidelines on how to

---

before the order for relief was not paid when due.

\* \* \* \* \* \*

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

**2.** *See e.g.,* Arizona Corporation Commission Rule 14–2–211 which governs termination of service for electric utilities.

satisfy the requirements of § 366(b) in Chapter 13 cases. The basis for the "guidelines" request is the cost to the Utilities, the Chapter 13 Trustee, and debtors of litigating § 366(b) issues on a case by case basis. Of course, I am only one of seven judges in this district and have no power to establish guidelines for the district. I can only address the issues raised by the parties in the context of my own docket and do so, with the admonition ringing in my ears from "Baby Judges' School" to avoid issuing advisory opinions. Nevertheless, because it would be helpful to Chapter 13 practitioners, the Chapter 13 Trustee and the Utilities to know what to expect on § 366(b) matters that arise on my docket, this decision will set out when utilities are entitled to an adequate assurance payment and how such payments may be provided for in a Chapter 13 Plan.

## B. Section 366 and the "Average" Consumer Debtor

■ Section 366 was intended "to strike a balance between the general right of a creditor to refuse to do business with the debtor postpetition and the coercive nature of such a move by a debtor's utility". *In re Best Products Co.*, 203 B.R. 51 (Bankr. E.D.Va.1996). No definition is provided in the Bankruptcy Code for what constitutes "adequate assurance". Numerous decisions have grappled with achieving the balance between protecting the utilities' right to be paid postpetition and a debtor's rights to continue to receive utility services. Some courts have held that a deposit should be required in all cases, regardless of a debtor's payment history and regardless of a utility's policy toward its non-debtor customers. *See e.g., In re Hanratty*, 907 F.2d 1418, 1423 (3rd Cir.1990)(Under § 366(b) utility is "expressly" authorized to request a security deposit and may discontinue service if it is not provided within 20 days after filing of a petition); *see also In re Wells*, 280 B.R. 701 (Bankr.S.D.Ala.2001); *In re Santa Clara Circuits West, Inc.*, 27 B.R. 680 (Bankr.D.Utah 1982). Other courts have determined that no deposit is required unless applicable state law regulations would permit a utility to demand a deposit from a customer. *See e.g., In re Coury*, 22 B.R. 766, 768 (Bankr.W.D.Pa.1982)(a utility cannot insist on the payment of security by one of its customers solely because the customer has filed a bankruptcy petition); *see also In re Kelly*, 25 B.R. 249 (Bankr. E.D.Pa.1982); *In re Shirey*, 25 B.R. 247 (Bankr.E.D.Pa.1982); *In re Roberts*, 27 B.R. 101 (Bankr.E.D.Pa.1983), *aff'd*, 29 B.R. 808 (E.D.Pa.1983); *In re Begley*, 41 B.R. 402 (E.D.Pa.1984), *aff'd*, 760 F.2d 46 (3d Cir.1985).

The divergence between the holdings in *Hanratty* and *Coury* is explained by how each court interpreted the relationship between § 366(a) and § 366(b). The *Coury* court found that § 366(b) had to be read "in conjunction" with the anti-discrimination provisions of § 366(a) which the *Coury* court found to permit a utility to discriminate only against a debtor who defaulted prior to filing a bankruptcy petition. Therefore, the *Coury* court held that § 366(b) gave utilities no rights to demand adequate assurance from a debtor unless there had been a prepetition default. 22 B.R. at 767.[3] The *Hanratty* decision

---

3. *Coury* was decided under the original version of § 366, which prohibited discriminatory conduct based solely on the debtor's prepetition indebtedness. The 1984 amendment to subsection (a) also forbids discrimination by a utility against the debtor based on the debtor's filing of a bankruptcy petition. *See* Vera Victoria Miles, *Adequate Assurance of Payment under Section 366 of the Bankruptcy Code: A Term for Interpretive Flexibility or Judicial Confusion?*, 20 Akron L.Rev. 715, 725–726 (1987).

found that the anti-discrimination language of § 366(a) is "subject to" the exception of § 366(b) permitting utilities to demand a deposit after 20 days regardless of a debtor's prepetition payment history. 907 F.2d at 1423; *see also Circuits West,* 27 B.R. at 683–684 (§ 366(b) is expressly made subject to § 366(b) ... § 366(b) is effective without regard to the pre-order-for-relief status of the debtor's account).

One commentator argues that making § 366(a) "subject to" § 366(b) effectively renders the prohibitive provisions of § 366(a) null and void. *See* Mills, 20 Akron L.Rev. at 725. However interesting it may be to try to figure out the interplay between §§ 366(a) and (b) fortunately, it is not necessary to do so to arrive at the balance between a debtor's right not to be discriminated against because of a prepetition default and/or the filing of a bankruptcy petition and utilities' rights not to be forced to provide services for which they may never be paid.

■ Regardless of whether § 366(b) is an exception to § 366(a) or whether § 366(a) is subject to § 366(b) postpetition, a utility is only entitled to adequate assurance of payment. Adequate assurance of payment is not, however, absolute assurance. The key to achieving the balance required by § 366 is not to confuse adequate assurance with adequate protection, which must be provided to a creditor under 11 U.S.C. § 361. In *Adelphia Business Solutions, Inc.,* 280 B.R. 63, 80 (Bankr.S.D.N.Y.2002), the court noted that:

> In determining adequate assurance, a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.

*See also Virginia Elec. & Power Co. v. Caldor, Inc.,* 117 F.3d 646 (2d Cir.1997); *Keydata Corp.,* 12 B.R. 156, 158 (1st Cir. BAP 1981) ("what is required is that the utility be protected from an unreasonable risk of non-payment").

■ Keeping in mind that all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment, it is apparent that in the vast majority of bankruptcy cases filed under Chapter 13 or Chapter 7, where a debtor is not delinquent in monthly payments and does not have a history of more than two delinquency payments over the preceding twelve months, there is not an unreasonable risk that the utilities will not be paid postpetition. Therefore, in the "garden variety" consumer case where there is no delinquent amount due, no adequate assurance payment is necessary. No adequate assurance payment is necessary because, notwithstanding the arguments made by the Utilities, the mere filing of a bankruptcy petition does not expose the Utilities to an unreasonable risk of non-payment. Indeed, when a Chapter 7 debtor is freed from having to pay other unsecured debts and a Chapter 13 debtor is paying all disposable income to the Chapter 13 Trustee, it will be more, not less, likely that the debtor will be able to pay postpetition monthly utility bills.

■ Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate assurance including discretion to determine that no deposit or other security is necessary. *Virginia Elec.,* 117 F.3d at 649. Courts have exercised that discretion to determine, that a number of factors including prepetition payment history and lack of any past requirement for a deposit may relieve a debtor from having to make any adequate assurance deposit postpetition. *See e.g., In re Caldor,* 199 B.R. 1, 3 (Bankr.

S.D.N.Y.1996), *aff'd*, 117 F.3d 646 (2d Cir. 1997); *In re Heard*, 84 B.R. 454, 459 (Bankr.W.D.Tex.1987)(Where the only "problem" the utility had with Chapter 7 debtors was the discharge of one month's prepetition bill, the utility "needs no adequate assurance").

■ The Utilities are apparently disturbed by the fact that most debtors are not regularly listing the Utilities as creditors.[4] However, even if every consumer debtor was to list the Utilities as creditors, which would be a Herculean task since it would require that every debtor figure out what the exact amount due is on a utility bill during the middle of a billing cycle, the Utilities have failed to demonstrate that the filing of a bankruptcy petition by a customer who is current, exposes them to an unreasonable risk of non-payment. Absent some evidence of delinquency or a history of non-payment over the preceding twelve-month period, the Utilities are not entitled to any adequate assurance.

■ The determination that no adequate assurance payment should be required in a consumer case where there is no outstanding history of delinquencies is bolstered by the existing Arizona regulatory scheme for utilities. Bankruptcy courts are not bound by local regulation in deciding § 366 issues. *See Adelphia*, 280 B.R. at 80. Nevertheless, those regulations may provide important guidance in determining when utilities face an unreasonable risk of non-payment. Under the applicable Arizona regulations, a utility may not seek a deposit from new residential customers who: (1) had utility service within the past two years; and (2) have not been delinquent in payment more than twice (once for telephone utilities) during the previous twelve months *or* have not been

disconnected for non-payment. *See* Arizona Corporation Commission Rule 14–2–203(B)(1) (electric); Arizona Corporation Commission Rule 14–2–503(B)(1)(a) (telephone); Arizona Corporation Commission Rule 14–2–303(B)(1)(a)(gas)(collectively the "Deposit Exception").

The Utilities, in bankruptcy cases where they have notice, close out a debtor's existing account and open a new account. Applicable Arizona law only permits the Utilities to demand a deposit from new customers who do not fall within the Deposit Exception. Interestingly, when dealing with their bankruptcy customers, the Utilities do not want to abide by the Arizona regulations regarding deposits, other than to use the regulations as a guideline for determining the amount of an adequate assurance deposit. In the vast majority of consumer cases, a debtor will fall within the Deposit Exception and the Utilities would be unable to demand a deposit under applicable Arizona law. The Utilities want to impose a different deposit requirements on customers who have sought protection under the Bankruptcy Code. However, the Utilities have failed to demonstrate that filing of a bankruptcy petition makes it unreasonably likely, that an otherwise non delinquent, debtor will not pay utility bills postpetition.

■ In the minority of cases where a consumer debtor has a history of non payment, the amount of prepetition debt is unusually large or there has been a difficult course of dealing between the consumer debtor and a utility the Utilities may be entitled to adequate assurance. However, even in those cases a deposit may not be the appropriate form of adequate assur-

---

**4.** A TEP representative testified that 2002 TEP received notice of Chapter 13 filings in only 26 cases. In 2002, in the Tucson Division of the U.S. Bankruptcy Court for the District of Arizona, 755 Chapter 13 cases were filed.

ance. As noted by the court in *In re Cunha*, 1 B.R. 330, 333 (Bankr.E.D.Va. 1979):

A deposit may not be the best protection. Indeed, such a deposit may be eroded by ever escalating utility costs. A stern policy of prompt payment for service or immediate curtailment may offer greater protection and be fairer, too, to the debtor who obviously is hard pressed to produce a cash deposit so soon after his financial collapse.

Because, in the vast majority of Chapter 13 cases, utility accounts will not be past due when a petition is filed, I see no need to adopt the "superintendency" rule approved by the court in *Hennen v. Dayton Power & Light Co.*, 17 B.R. 720, 725 (Bankr.S.D.Ohio 1982), which would require that every Chapter 13 debtor set aside some amount for an adequate assurance deposit. In most cases, the Utilities will not be entitled to any adequate assurance and, therefore, to impose a requirement that in every single Chapter 13 case certain monies be paid to the Chapter 13 Trustee and set aside for the Utilities, simply creates unnecessary work for the Chapter 13 Trustee, debtors and their counsel.

### C. *Section 366 and the Delinquent Chapter 13 Debtor*

In those cases where a Chapter 13 debtor is more than one month in arrears on utility payments or has been delinquent in payments more than twice in the twelve months before the bankruptcy filing, some standardized procedure should *be* available to provide the Utilities with adequate assurance. Of course, pursuant to § 366(b) a debtor may, prior to the 21st day after filing a case, petition the court for a determination of what adequate assurance should be provided to a utility whose account was over 30 days past due on the petition date. A Chapter 13 debtor is also free to enter into an agreement like the "opt out" option proposed by TEP and Southwest. Under such an opt out agreement, the rights of the debtor and the Utilities will be governed by the Arizona regulatory scheme including the Deposit Exception. However, it should also be possible for a Chapter 13 debtor who wants to do so, to address the adequate assurance requirements of § 366(b) in a Chapter 13 plan.

In *In re Epling*, 255 B.R. 549 (Bankr.S.D.Ohio 2000) the court approved a procedure where a debtor, who owed past due amounts to utilities, earmarked a portion of the funds paid to the Chapter 13 Trustee for payment of a utility deposit authorized by state regulation or other non-bankruptcy law. Under that procedure, once a Chapter 13 Plan is confirmed, if the utility files a proof of claim and it is allowed, the Trustee will make the deposit payment to the utility from the earmarked funds.

Providing for such treatment of a utility in a Chapter 13 Plan will satisfy the "adequate assurance" requirements of § 366(b). As noted by the *Epling* court, "It is the proposed earmarking, followed by actual payment to the Trustee, that provides for adequate assurance." 255 B.R. at 553. The *Epling* court also addressed the Utilities' argument that § 366 is intended to be self-executing. Requiring documentation from the Utilities in the form of a proof of claim is not offensive because any demand for a deposit outside of bankruptcy would have to be made by written request, therefore, requiring the Utilities to file a proof of claim does not place any more burden on the Utilities than they would otherwise face. The *Epling* court also found that providing for the treatment of utilities in Chapter 13 Plans satisfies the 20–day requirement of

Section 366(b) because under Bankruptcy Rule 3015, Chapter 13 Plans must be filed with the bankruptcy petition or 15 days thereafter.

I believe that the procedure approved in *Epling* makes sense and meets the requirements of § 366(b) if a Chapter 13 debtor chooses to use it. However, the *Epling* procedure assumes that the Chapter 13 Plan will be confirmed. Of course, that is not always the case. The Utilities must also receive the earmarked funds in the event of a dismissal of a Chapter 13 case. Chapter 13 Plans dealing with delinquent utility payments should, therefore, provide that in the event of dismissal, the earmarked funds will be paid to a utility if its claims have been allowed.

 It is important to note that under the *Epling* procedure, once a utility's adequate assurance claim is allowed, the utility receives the adequate assurance deposit *regardless* of the debtors' postpetition payment history. Any right to a refund of the Chapter 13 adequate assurance deposit will be governed by applicable Arizona law, post discharge. Under the *Epling* procedure, therefore, if a utility's claims are allowed, the general unsecured creditors in the Chapter 13 case will never have the opportunity to receive the earmarked funds. But that does not mean that a Chapter 13 plan using the *Epling* procedure will violate the disposable income requirements of § 1325(b)(1)(B). As long as a debtor is paying all disposable income to the Chapter 13 Trustee, § 1325(b)(1)(B) is satisfied. Furthermore, because any requirement to make an adequate assurance deposit arises postpetition, it is entitled to administrative priority claim status and may properly be paid before general unsecured claims. *See* 11 U.S.C. §§ 507(a)(1)(A) and 1322(a)(2).

The potential value of the *Epling* procedure is that it will permit Chapter 13 debtors to meet the requirements of § 366(b) by the filing of a Chapter 13 plan which provides for an adequate assurance deposit pending a determination of the validity of a utility's proof of claim. In most cases where a debtor has a utility delinquency, the parties will work out a consensual resolution. When they cannot do so, the court will make an individualized case by case determination, as envisioned in cases like *Adelphia* and *Cunha,* where the courts recognized a case involving a delinquency must be analyzed on its own facts. *Adelphia,* 280 B.R. at 82; *Cunha,* 1 B.R. at 333.

 The *Epling* court, like the *Hennen* court assumed that utilities could only demand an adequate assurance deposit if a debtor was required to make such a deposit under applicable state law. *Hennen,* 17 B.R. at 724; *Epling,* 255 B.R. at 552. However, the determination of what constitutes adequate assurance is a federal bankruptcy law question. *Adelphia,* 280 B.R. at 80. While the state regulatory scheme may inform that determination, state law does not control. Therefore, I find that if there is a 30–day prepetition delinquency or a history of two delinquent payments within the preceding twelve-months, the Utilities may be entitled to some type of adequate assurance even if a debtor falls within the Deposit Exception.

### D. *Section 366 and the Steinebachs*

 In this case, to date the Utilities have been provided adequate assurance by the entry of the Agreed Order which permitted the Utilities expedited access to the court in the event of a postpetition default by the Steinebachs. Despite the fact that the Steinebachs fell behind to both TEP and Qwest, as of the date of this Memorandum Decision, the Steinebachs are apparently current on all utility payments. At the same time, the Utilities have had to

incur attorneys' fees to send demands to the Debtors and their counsel demanding cures of postpetition delinquencies. Clearly in this case, a stern policy of prompt payment has not been sufficient adequate assurance. Therefore, the Debtors should amend their Chapter 13 plan to provide that an amount equal to one month's average bill be earmarked as an adequate assurance for payment to each of the Utilities. Furthermore, should the Debtors default in the future on their payments to the Utilities, the Utilities may seek expedited stay relief under § 362(f). As part of that expedited relief, the Utilities may seek payment of attorneys' fees and costs associated with bringing a § 362(f) motion. Any award of fees and costs will be made on a case by case basis.

## CONCLUSION

Utilities are not entitled to any adequate assurance in a consumer case where the debtor is not delinquent in regular utility payments. In cases where a debtor is more than 30–days past due or has been delinquent in making payments more than twice in the preceding twelve months, the Utilities may be entitled to adequate assurance. A Chapter 13 debtor may provide adequate assurance to a utility by filing a plan which earmarks monies paid to the Trustee as a utility deposit. Such plans *must* be filed within the 15–day time period required under Bankruptcy Rule of Procedure 3015. A utility provided with an adequate assurance deposit from earmarked funds held by the Chapter 13 Trustee, must file a proof of claim for the deposit. When the claim is allowed, the utility will be paid the deposit, even if the case is never confirmed and regardless of the debtor's postpetition payment history. After discharge, any right to a refund of the adequate assurance deposit will be governed by applicable Arizona law. A Chapter 13 debtor who is delinquent in

utility payments is also free to provide adequate assurance by timely seeking a bankruptcy court determination of what adequate assurance should be provided. Such a debtor may also enter into an agreement to forego the protections of the automatic stay and be treated in accordance with applicable Arizona law with respect to both pre and postpetition utility obligations.

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rules of Procedure 7052. A separate Judgment consistent with the terms of this Memorandum Decision has already been entered.